# IN THE SUPREME COURT OF IOWA

No. 15–0156

Filed May 1, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KENNETH J. WEILAND, JR.,**

Respondent.

_____

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports an attorney committed ethical misconduct and recommends a public reprimand. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

Kenneth J. Weiland, Jr., Des Moines, pro se.

**ZAGER, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged attorney Kenneth J. Weiland Jr. with violations of several of our ethical rules based on his actions in an appeal filed with this court. After a hearing, a division of the Grievance Commission of the Supreme Court of Iowa found Weiland's conduct was prejudicial to the administration of justice in violation of Iowa Rule of Professional Conduct 32:8.4(d), and recommended we impose a public reprimand. Upon our de novo review, we concur in the commission's finding that Weiland's conduct was prejudicial to the administration of justice in violation of rule 32:8.4(d). Additionally, we conclude Weiland failed to make reasonable efforts to expedite litigation consistent with the interests of his client in violation of Iowa Rule of Professional Conduct 32:3.2. Ultimately, we agree with the commission that a public reprimand is appropriate.

## I. Factual Background and Proceedings.

Weiland was admitted to practice law in Iowa in 1994. He currently works in Des Moines, as a solo practitioner. His practice includes representing clients in a variety of matters, including family law. The Board's complaint in this case stems from Weiland's representation of Ryan Pierce in an appeal from a domestic relations case.

Weiland's representation of Pierce began in 2012 when Weiland agreed to represent Pierce in a domestic relations case. The case proceeded to trial on December 17, 2012. The district court entered a decree in the matter on January 2, 2013. After reviewing the decree, Weiland concluded the district court failed to address an issue he believed it was required to address. Accordingly, Weiland informed Pierce that there were sufficient grounds to appeal the case. Based on

Weiland's advice, Pierce elected to appeal the case. Weiland filed a notice of appeal on January 31.

After filing the notice of appeal, Weiland failed to file and serve a combined certificate or pay the filing fee as required by our rules of appellate procedure. *See* Iowa R. App. P. 6.702(1)(a) (establishing the filing fee for appeals and requiring the appellant to "pay the fee . . . within seven days after filing the notice of appeal"); *id.* r. 6.804(1) (requiring the appellant to complete and file a combined certificate "within seven days after filing the notice of appeal," and further requiring the appellant to "serve the combined certificate on all parties to the appeal and on each court reporter from whom a transcript was ordered"). On March 8, the clerk of the Iowa Supreme Court sent Weiland a notice of default informing him of the deficiency and assessing a $150 penalty against him. The notice further informed Weiland that if he failed to remedy the default within fifteen days, the clerk would dismiss the appeal for want of prosecution. *See id.* r. 6.1202(1)(*a*) ("If the appellant fails to cure the default, the clerk shall enter an order dismissing the appeal.").

On the morning of March 25, Weiland called the court reporter that had reported the trial, Lisa McCarville, and requested a transcript of the Pierce trial. Later that morning, McCarville sent Weiland a follow-up email in which she stated that after their phone conversation, she reviewed her records and determined the transcript would cost $220.50. The email further stated that she would need a copy of the combined certificate. Additionally, the email stated, "I will get to work on the transcript as soon as I receive your deposit." That same day, Weiland filed a combined certificate with the clerk in which he certified that "the

Transcript ha[d] been ordered." He did not serve McCarville with the combined certificate.

On June 4, the clerk sent both Weiland and McCarville a notice of failure to timely file transcript notifying them that McCarville had not filed the transcript by the deadline. *See id.* r. 6.803(3)(*c*) (establishing the deadline for filing transcript as forty days after service of the combined certificate). On June 5, McCarville filed a reporter's application for an extension of time to file a transcript. In the application, she certified that she "ha[d] not received an order for transcript from . . . Weiland" because he had not served her with a copy of the combined certificate. *See id.* r. 6.803(1) (requiring the "appellant [to] use the combined certificate to order in writing from the court reporter a transcript"). The application also noted that she had not received a deposit for the transcript.

On June 17, this court filed an order requiring Weiland to "serve court reporter McCarville with the combined certificate and pay her required deposit" by June 27. The order further stated, "[F]ailure to pay [for] the transcript should be reported by the court reporter to this court, and will result in [the] appeal being dismissed for appellant's failure to comply with the appellate rules." On July 8, eleven days after the deadline, McCarville filed a reporter's report of nonpayment in which she certified that as of July 3, Weiland had not sent her a combined certificate or paid the deposit. Accordingly, on July 18, this court filed an order dismissing the appeal for failure to comply with our appellate rules and instructing the clerk to forward a copy of the order to the Board for further action. *See id.* r. 6.1202(3) ("Following the dismissal of an appeal for failure to comply with an appellate deadline where the appellant was represented by an attorney, the clerk . . . shall forward

certified copies of the docket, the notice of default which resulted in dismissal, and the order of dismissal to the . . . Board.").

Based on these facts, the Board filed a complaint on August 11, 2014. In its complaint, the Board alleged Weiland violated Iowa Rules of Professional Conduct 32:1.3 (requiring diligence), 32:3.2 (requiring reasonable efforts to expedite litigation), 32:3.3(a)(1) (prohibiting false statements to a tribunal), 32:3.4(c) (requiring compliance with the rules of a tribunal),[1] and 32:8.4(d) (prohibiting conduct prejudicial to the administration of justice). Weiland filed his answer on September 10. In his answer, he admitted all the factual allegations in the Board's complaint. However, he denied that his conduct violated any ethical rules. Additionally, Wieland asserted that he communicated to Pierce the need for Pierce to provide him with funds for the transcript on multiple occasions, but that Pierce had failed to do so. He also asserted that the reason he failed to dismiss the appeal was that he wanted to give Pierce "every opportunity to appeal his case."

The commission conducted an evidentiary hearing in November. At the hearing, the following witnesses testified: Christine Mayberry, deputy clerk for the Iowa appellate courts; McCarville; and Weiland. Mayberry testified that between 1998 and 2014 Weiland has received forty notices of default for failing to comply with deadlines in various appeals. She testified that based on her fifteen years of experience as deputy clerk, this is an excessive number of notices of default. She

---

[1]Prior to the hearing before the commission, the Board abandoned its claim that Weiland's conduct violated rule 32:3.4(c). Accordingly, we do not consider whether Weiland's conduct violated rule 32:3.4(c). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Keele*, 795 N.W.2d 507, 511 (Iowa 2011) (declining to address rule violations abandoned by the Board on appeal).

further testified that when the clerk's office is required to send default notices, it causes "a significant drain on [the office's] workload."[2]

McCarville testified that when a party files an appeal, the court reporter in the underlying matter typically receives a copy of the combined certificate. This combined certificate notifies the court reporter that a party has filed an appeal for which a transcript is needed and provides the court reporter with details as to the dates of future deadlines. She testified that in Pierce's case she did not receive a combined certificate. Instead, Weiland called her to request a transcript. She testified that after receiving the call from Weiland, she found the appeal online and discovered that Weiland had recently filed the combined certificate. She then emailed Weiland and requested that he send her a copy of the combined certificate and informed him of the cost of the transcript.

McCarville gave conflicting testimony as to whether she considered the transcript ordered after speaking with Weiland on the phone on March 25. Initially, she testified that she requires the deposit to be paid prior to considering the transcript ordered. She testified that she typically requires a deposit in advance because doing so ensures that she receives payment for her services. However, she then testified that after her conversation with Weiland, she "considered [Weiland to have] ordered the transcript verbally." She further testified that although she was waiting for both the combined certificate and her deposit, she probably

---

[2]Weiland objected to the admission of this testimony and to related documentary evidence. He argued the commission could not use this evidence to find he committed an ethical violation. However, he acknowledged the commission could use this evidence "in regards to any disposition if there is a finding [he] acted in an unethical manner." Thus, as did the commission, we consider this evidence only as it relates to our consideration of the appropriate sanction.

began doing some preliminary work on the transcript to ensure she did not miss any deadlines.

Weiland admitted that he failed to serve McCarville with the combined certificate. However, he maintained that he did not know our appellate rules required him to do so. Additionally, he testified that when he spoke with McCarville on the phone on March 25, he believed he had ordered the transcript. He testified that when he certified in the combined certificate that he had ordered the transcript, he knew he had not paid McCarville. However, he believed that ordering the transcript and paying for the transcript were distinct concepts. Accordingly, in certifying on the combined certificate that he had ordered the transcript, he "didn't believe [he] was lying to the Court . . . or misrepresenting anything."

Weiland did not dispute receiving the various notices of default in Pierce's appeal. However, he testified that Pierce had been unable to supply him with the necessary funds for either the filing fee or the transcript. He further testified that he advanced Pierce $150 for the filing fee and that Pierce eventually reimbursed him $100 of that amount. However, Pierce never provided him funds for the transcript, despite Weiland's repeated requests that he do so. Weiland testified that he did not dismiss the appeal after the June 27 deadline because he believed Pierce still wanted to pursue it, and he hoped Pierce would "come up with [the] money." Accordingly, Weiland "wasn't trying to cause the Court problems." Instead, he was trying to protect Pierce's appeal rights by "gett[ing] as much time for him to [obtain the funds as possible]."

Weiland expressed remorse for failing to dismiss Pierce's appeal once he realized Pierce would not be able to obtain funds for the

transcript. He testified that when a client is unable to obtain funds for an appeal in the future, he will withdraw as counsel instead of repeatedly missing deadlines. He further noted that although he has a history of failing to meet appellate deadlines, he has recently improved his compliance with appellate deadlines. Specifically, he highlighted that many of the notices of default he has received in the past occurred "closer to the early 2000s." However, he admitted he received notices of default in two other appeals in 2014 for failing to file the required combined certificates. Finally, Weiland acknowledged that the Board privately admonished him in 2003 for failing to dismiss an appeal after the client decided not to pursue it. However, he distinguished the instant case from this prior misconduct, noting that in this case his client wanted to pursue the appeal, but was unable to obtain the necessary funds to do so.

The commission issued its written findings of fact, conclusions of law, and recommended sanction on January 27, 2015. It concluded the Board failed to present sufficient evidence to demonstrate Weiland's conduct violated rules 32:1.3 (requiring diligence), 32:3.2 (requiring reasonable efforts to expedite litigation), and 32:3.3(a)(1) (prohibiting false statements to a tribunal). Specifically, it concluded Weiland's failure to dismiss the appeal was an attempt to protect the interests of his client. Additionally, it credited Weiland's testimony that he had verbally ordered the transcript on March 25. Accordingly, the commission concluded that Weiland had not neglected Pierce's case or knowingly made a false statement in the combined certificate. However, the commission concluded Weiland's conduct violated rule 32:8.4(d) (prohibiting conduct prejudicial to the administration of justice). Specifically, it reasoned that Weiland had a duty to dismiss the appeal by

the July 27 deadline once he realized Pierce would not be able to obtain funds for the transcript, instead of relying on the clerk to dismiss the appeal. The commission credited Weiland for taking responsibility for his actions. It also credited Weiland for his commitment to require clients to pay him filing and transcript fees in advance to avoid similar problems in the future. Finally, the commission credited Weiland for maintaining a law practice that allows persons of modest means to obtain access to the courts at a modest rate. The commission recommended we publicly reprimand Weiland.

## II. Standard of Review.

Our review of attorney disciplinary proceedings is de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 63 (Iowa 2014). The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 113 (Iowa 2014). We give the commission's findings and recommendations respectful consideration, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 696 (Iowa 2014). "Upon proof of misconduct, we may impose a greater or lesser sanction than the sanction recommended by the commission." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 764 (Iowa 2010).

## III. Review of Alleged Ethical Violations.

The Board alleged numerous violations of the Iowa Rules of Professional Conduct based on Weiland's conduct in the Pierce appeal. Weiland admitted each of the factual allegations in the Board's complaint. "Factual matters admitted by an attorney in an answer are deemed established, regardless of the evidence in the record." *Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013). We turn now to address the individual rule violations alleged by the Board.

**A. Rule 32:1.3: Reasonable Diligence and Promptness.** This rule requires a lawyer to "act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. We have recognized that an attorney violates rule 32:1.3 when he or she neglects a client matter.[3] *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 915 (Iowa 2011). Generally, neglect involves " 'a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lickiss*, 786 N.W.2d 860, 867 (Iowa 2010) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Moorman*, 683 N.W.2d 549, 551 (Iowa 2004)). "[O]rdinary negligence does not constitute neglect." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 265 (Iowa 2012). Thus, "[a] violation of this rule arises not from inadvertent acts or omissions or from missing a single deadline, but from consistently failing to perform functions required of an attorney or from repeatedly missing deadlines." *Conroy*, 845 N.W.2d at 64.

We have previously held that "even if a client no longer wants a matter to be pursued, it is neglect for the attorney to allow the matter to languish, without terminating it." *Dolezal*, 796 N.W.2d at 915. We have explained:

---

[3]"The Iowa Rules of Professional Conduct no longer expressly refer to neglect. Nevertheless, we have continued to identify and sanction attorney neglect." *Conroy*, 845 N.W.2d at 63 (citation omitted). We do so under rule 32:1.3. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 102 (Iowa 2012). Thus, neglect cases under a prior version of our ethical rules provide "precedent for the interpretation and application of rule 32:1.3." *Id.*

> Regardless of the client's interest in the case, the onus is on the attorney to comply with the deadlines provided in the appellate rules. Unless the court relieves an attorney of his or her responsibility to the client on appeal, as an officer of the court, the attorney is required to file the appropriate documents and briefs. Anything less may be considered neglect. . . . [S]imply because a client does not want to pursue the case does not relieve the attorney from taking steps necessary to end the matter.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 105 (Iowa 2006) (citations omitted).

However, when an attorney fails to comply with appellate deadlines or dismiss an appeal to protect a client's interests, we will not find such conduct amounts to neglect. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 758 N.W.2d 227, 230 (Iowa 2008). For example, in *Wright*, after an attorney filed a notice of appeal, he contacted the court reporter in the underlying matter to order the transcript. *Id.* at 228. The court reporter informed the attorney that she would not prepare the transcript until she received payment. *Id.* The attorney contacted his client who reported that she did not have funds for the transcript, but that she would attempt to borrow them. *Id.* at 228–29. The attorney then filed a combined certificate in which he certified that he would pay for the transcript in accordance with our appellate rules. *Id.* at 229. However, he failed to serve the combined certificate on the court reporter. *Id.* As a result, the court reporter did not prepare the transcript by the deadline. *Id.* The attorney then also failed to file the required proof brief and designation of the contents of the appendix by the deadline. *Id.* Accordingly, the clerk sent the attorney a notice of default informing him that if he did not cure the various deficiencies within fifteen days, the appeal would be dismissed. *Id.* The attorney again contacted his client, who was still unable to obtain funds for the transcript. *Id.* The attorney

did not cure the default by the deadline, and the clerk dismissed the appeal. *Id.*

We concluded the attorney's conduct did not amount to neglect. *Id.* at 230. We explained:

> [I]t was [the client's] failure to pay for the transcript, not [the attorney]'s actions, that prevented [the client] from proceeding with the appeal. Under the facts presented here, we find the Board failed to prove [the attorney] neglected [the client]'s interests. [This attorney] in fact protected [his client]'s interest by commencing and maintaining the appeal notwithstanding her failure to pay his fee as she had agreed, and by allowing her time . . . to raise the funds to pay for the transcript.

*Id.*

In this case, as in *Wright*, we do not find Weiland's conduct amounted to neglect in violation of rule 32:1.3. The commission credited Weiland's testimony that his failure to comply with various appellate deadlines and timely dismiss the appeal was the result of his attempt to protect his client's interests. Specifically, the commission found that Pierce wanted to pursue the appeal through June and that Weiland wanted to afford Pierce every opportunity to obtain funds for the transcript. We give deference to the commission's credibility determination because the commission heard Weiland's live testimony and observed his demeanor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 659 (Iowa 2013). Thus, the record established that Weiland attempted to protect the interests of his client by commencing and maintaining the appeal, advancing Pierce funds for the filing fee, and allowing Pierce time to raise funds for the transcript. Under the facts presented here, we find the Board failed to prove Weiland violated rule 32:1.3.

**B. Rule 32:3.2: Expedite Litigation.** This rule provides, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. We require lawyers to make reasonable efforts to expedite litigation because "[d]ilatory practices bring the administration of justice into disrepute." *Id.* cmt. [1]. In failure-to-expedite cases, "[t]he question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay." *Id.* An attorney violates this rule when he or she fails to "file documents, pursue appeals, and meet deadlines." *Conroy*, 845 N.W.2d at 65. "The Board is only required to prove the attorney's intent if the sole allegation is an attorney engaged in particular conduct for the purpose of frustrating the judicial process." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barnhill*, 847 N.W.2d 466, 484 (Iowa 2014).

The commission concluded that Weiland did not violate rule 32:3.2. We disagree. The record showed Weiland failed to timely file the combined certificate as required by our appellate rules, failed to serve the combined certificate on the court reporter as required by our appellate rules and as ordered by this court, and ultimately allowed the appeal to languish and be administratively dismissed. We have found violations of this rule in similar situations. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 847 N.W.2d 489, 493 (Iowa 2014) (finding the attorney's "serial failures to comply with the requirements of this court's procedural rules governing the timely presentation and progression of appeals constituted a violation of her obligation to demonstrate reasonable efforts to expedite numerous appeals consistent with her clients' interests"); *Conroy*, 845 N.W.2d at 65 (collecting cases and finding a rule 32:3.2 violation when the attorney failed to cure

defaults in six appeals); *Dolezal*, 796 N.W.2d at 914 (finding a rule 32:3.2 violation when the attorney failed to follow through with or dismiss appeals and disregarded default notices). Although Weiland failed to comply with our appellate procedures in an effort to protect Pierce's interests, the comments to the rule disclaim such motivation as a legitimate interest of a client. *See* Iowa R. Prof'l Conduct 32:3.2 cmt. [1] ("Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client."); *accord* 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 31.03, at 31-4 to -5 (4th ed. 2015) (recognizing that a client's interest in delay itself is not "entitled to weight in assessing the propriety of a lawyer's tactics on behalf of the client"). Expediting an appeal by meeting deadlines, even when the client would benefit from delay, is consistent with the *legitimate* interest of the client and is therefore required by the rule. Here, Weiland elevated the client's interests over his obligations to the court. Weiland violated rule 32:3.2.[4]

**C. Rule 32:8.4(d): Conduct Prejudicial to the Administration of Justice.** This rule prohibits an attorney from engaging in "conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). "There is no typical form of conduct that prejudices the administration of justice." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 587 (Iowa 2011). Acts we have generally considered prejudicial to the administration of justice have "hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely." *Wright*, 758 N.W.2d at 230 (internal

---

[4]As the Board did not contend Weiland engaged in conduct for the purpose of frustrating the judicial process, we need not address whether he acted with such intent. *See Kieffer-Garrison*, 847 N.W.2d at 493 n.2.

quotation marks omitted). "Examples of conduct prejudicial to the administration of justice include paying an adverse expert witness for information regarding an opponent's case preparation, demanding a release in a civil action as a condition of dismissing criminal charges, and knowingly making false or reckless charges against a judicial officer." *Templeton*, 784 N.W.2d at 768. Most relevant here, "When an attorney's failure to comply with appellate deadlines results in an administrative dismissal, his actions are prejudicial to the administration of justice." *Dolezal*, 796 N.W.2d at 914; *accord Iowa Supreme Ct. Att'y Disciplinary Bd. v. Tompkins*, 733 N.W.2d 661, 668 (Iowa 2007) (finding an attorney acted in a manner prejudicial to the administration of justice when he failed to prosecute or move to dismiss an appeal he believed to be without merit); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa 2002) (finding an attorney acted in a manner prejudicial to the administration of justice when he failed to comply with appellate deadlines). This is so even when such conduct does not amount to neglect. *See Taylor*, 814 N.W.2d at 267 ("[A]n attorney can be in violation of rule 32:8.4(d) when an appeal is administratively dismissed even though the attorney did not commit neglect in the handling of the appeal."); *Wright*, 758 N.W.2d at 230–31 (finding an attorney's reliance on the clerk to dismiss an appeal when the client could not raise funds for the transcript was prejudicial to the administration of justice, despite the fact such conduct did not amount to neglect).

The commission concluded Weiland's failure to dismiss the appeal by the June 27 deadline established by this court's June 17 order violated rule 32:8.4(d). We agree. Although Weiland's conduct did not amount to neglect, Weiland was not relieved " 'from taking steps to end

the matter.' " *Wright*, 758 N.W.2d at 231 (quoting *Lesyshen*, 712 N.W.2d at 105). On June 17, this court ordered Weiland to "serve court reporter McCarville with the combined certificate and pay her required deposit" by June 27. The June 17 order further notified Weiland that "failure to pay [for] the transcript . . . [would] result in [the] appeal being dismissed." Weiland knew by the June 27 deadline that Pierce would be unable to pay for the transcript, yet he took no action to dismiss the appeal. His inaction caused the clerk to prepare and file an order three weeks later accomplishing the dismissal. " 'Our case law makes it clear that an attorney cannot use a default notice to dismiss an appeal in lieu of the attorney's obligation to comply with our appellate rules.' " *Id.* at 231 (quoting *Tompkins*, 733 N.W.2d at 669). Weiland violated rule 32:8.4(d).

**D. Rule 32:3.3(a)(1): Candor Toward the Tribunal.** This rule prohibits a lawyer from "knowingly . . . mak[ing] a false statement of fact or law to a tribunal." Iowa R. Prof'l Conduct 32:3.3(a)(1). Because the lawyer must knowingly make the false statement, the lawyer must have "actual knowledge of the fact in question." Iowa R. Prof'l Conduct 32:1.0(f) (defining the term "knowingly"). A lawyer can make a false statement to the court either orally or in writing. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 462 (Iowa 2014). We found a violation of this rule when a lawyer falsely certified to the clerk of this court that she had filed an application for further review. *Kieffer-Garrison*, 847 N.W.2d at 494. We have also found violations

> when a lawyer filed falsely notarized documents with the court, when a lawyer forged a guilty plea for a defendant he was representing, and when a lawyer filed a document with the court misrepresenting the marital status of a decedent.

*McGinness*, 844 N.W.2d at 462.

The Board alleges Weiland violated this rule by falsely certifying in the combined certificate he filed with the clerk that "the Transcript ha[d] been ordered." In fact, he had not served McCarville with the combined certificate or made the necessary deposit at the time he filed the combined certificate. The commission concluded the Board failed to show that Weiland possessed the requisite knowledge to have violated this rule. Specifically, the commission credited the testimony of both Weiland and McCarville, each of whom testified that when Weiland contacted McCarville by phone on the morning of March 25, Weiland verbally ordered the transcript. Thus, the commission concluded that at the time Weiland certified in the combined certificate that he had ordered the transcript, he believed that he had done so.

We agree with the commission that the Board failed to present sufficient evidence to establish a violation of this rule. Here again, with respect to the testimony of both Weiland and McCarville, we defer to the commission's credibility determinations because it heard their live testimony and observed their demeanor. *See Clarity*, 838 N.W.2d at 659. At the hearing before the commission, McCarville gave conflicting testimony as to whether Weiland ordered the transcript during their phone conversation. However, she ultimately conceded she "considered [Weiland to have] ordered the transcript verbally." Weiland testified he believed he had ordered the transcript at that time as well. Nothing in the email McCarville sent to Weiland is inconsistent with Weiland having placed a verbal order. Thus, the record showed that at the time Weiland certified in the combined certificate that he had ordered the transcript, he reasonably believed he had done so. We find the Board failed to establish that Weiland possessed the requisite knowledge to have violated rule 32:8.4(d).

**IV. Consideration of Appropriate Sanction.**

Having found the foregoing rule violations, we now consider the appropriate sanction. The commission found only a single violation of our rules and recommended we publicly reprimand Weiland. We give respectful consideration to the commission's recommendation. *Ricklefs*, 844 N.W.2d at 699. However, the issue of appropriate sanction is exclusively within this court's authority. *Id.*

"There is no standard sanction for a particular type of misconduct, and though prior cases can be instructive, we ultimately determine an appropriate sanction based on the particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 308 (Iowa 2009). As we have previously stated,

> In considering an appropriate sanction, this court considers all the facts and circumstances, including the nature of the violations, the attorney's fitness to practice law, deterrence, the protection of society, the need to uphold public confidence in the justice system, and the need to maintain the reputation of the bar.

*McGinness*, 844 N.W.2d at 463. "Where there are multiple violations of our disciplinary rules, enhanced sanctions may be imposed." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Alexander*, 574 N.W.2d 322, 327 (Iowa 1998). Further, we "consider mitigating and aggravating circumstances, including companion violations, repeated neglect, and the attorney's disciplinary history." *Conroy*, 845 N.W.2d at 66.

In this case, Weiland failed to comply with appellate deadlines in a single matter and failed to dismiss his client's appeal. Instead, Wieland allowed the appeal to be administratively dismissed. Sanctions for conduct of this nature range from a public reprimand when the attorney's misconduct is relatively isolated, to suspensions of several months when the conduct is egregious or accompanied by related

misrepresentations, additional violations, or other aggravating circumstances. *See, e.g.*, *Kieffer-Garrison*, 847 N.W.2d at 492, 494, 496 (finding an attorney's failure to comply with appellate deadlines in nine criminal cases resulting in receipt of twenty default notices warranted a six-month suspension when the attorney also persistently misrepresented that she had filed an application for further review to her client and this court); *Dolezal*, 796 N.W.2d at 914, 920, 922–23 (finding an attorney's failure to cure default notices in two appeals resulting in administrative dismissals warranted a thirty-day suspension when the attorney neglected two additional matters, committed trust-account violations, and had a history of failing to comply with court requirements); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 531–32 (Iowa 2011) (finding an attorney's failure to cure a default notice in an appeal warranted a three-month suspension when the attorney also failed to file state income tax returns for two years in violation of ethical rules); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hoglan*, 781 N.W.2d 279, 282–83, 286–87 (Iowa 2010) (finding an attorney's failure to prosecute four appeals resulting in their dismissal warranted a thirty-day suspension when each dismissal harmed the client and the attorney had previously been publicly reprimanded for similar misconduct); *Wright*, 758 N.W.2d at 231 (finding an attorney's failure to dismiss an appeal after the client was unable to raise funds for a transcript warranted a public reprimand); *Tompkins*, 733 N.W.2d at 669–70 (finding an attorney's failure to dismiss an appeal warranted a public reprimand). Further, when such deficiencies result in harm to clients, increased sanctions are warranted. *See, e.g., Dolezal*, 796 N.W.2d at 922 (considering harm to clients in crafting appropriate

sanction); *Hoglan*, 781 N.W.2d at 286 (same); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 704 (Iowa 2008) (same).

We draw guidance from the following attorney discipline cases involving similar misconduct. In *Dolezal*, we suspended an attorney's license for thirty days. 796 N.W.2d at 923. There, the attorney failed to cure default notices in two appeals leading to their dismissal. *Id.* at 914. We concluded this conduct violated rules 32:1.3, 32:3.2, and 32:8.4(d). *Id.* at 914–15. In addition to rule violations related to the attorney's failure to cure the default notices, we found the attorney neglected two other client matters, in one instance harming the client, and violated several of our rules governing an attorney's management of the trust account. *Id.* at 920. In crafting the appropriate sanction, we emphasized that while the attorney's behavior "inconvenienced the court system, in two out of three instances it [did] not harm[] his clients." *Id.* at 922. We considered as aggravating factors that the Board had recently privately admonished the attorney for failing to respond to delinquency notices in another matter and that he had failed to comply with continuing legal education requirements in the past. *Id.* at 920.

In *Hoglan*, we suspended an attorney's license for thirty days when he failed to prosecute four appeals resulting in their dismissal. 781 N.W.2d at 282–83, 287. We concluded this conduct violated rules 32:1.3, 32:1.16(a)(2) (requiring withdrawal from representation if a physical or mental condition materially impairs a lawyer's ability to represent the client), 32:3.2, 32:8.4(a) (finding it misconduct to violate an ethical rule), and 32:8.4(d). *Id.* at 284. In crafting the proper sanction, we emphasized that the attorney neglected multiple client matters, each dismissal harmed the client, and the attorney had recently been publicly reprimanded for the dismissal of two other appeals due to neglect. *Id.* at

286–87.  We considered the attorney's severe back problems as a mitigating factor.  *Id.* at 287.

In *Wright*, we publicly reprimanded an attorney who failed to comply with appellate deadlines in a single client matter and failed to dismiss his client's appeal, instead allowing it to be administratively dismissed.  758 N.W.2d at 230–31.  We found the attorney's reliance on a default notice to dismiss the appeal after his client could not raise funds for the transcript was prejudicial to the administration of justice.  *Id.* at 231.  However, we concluded this same conduct did not amount to neglect because the attorney was attempting to protect his client's interests by allowing her time to obtain funds for the transcript.  *Id.* at 230.  In crafting the proper sanction, we considered as aggravating factors that the lawyer had over twenty-five years of experience in the field, had been publicly reprimanded on one prior occasion, and that he had been privately admonished on two prior occasions.  *Id.* at 231.

Finally, in *Tompkins*, we publicly reprimanded an attorney who neglected two client matters.  733 N.W.2d at 669–70.  In the first matter, the attorney neglected the client "by failing to communicate with [him] and respond to his inquiries."  *Id.* at 669.  In the second matter, the attorney allowed the client's "appeal to be administratively dismissed, neglecting his client, and wasting judicial resources."  *Id.*  In crafting the proper sanction, we emphasized that little harm ultimately befell either client because they were unlikely to succeed on their claims.  *Id.*  We considered as an aggravating factor that the attorney had been publicly reprimanded on two prior occasions.  *Id.* at 670.

We believe this case is distinguishable from *Dolezal* and *Hoglan*.  In those cases there were multiple instances of neglect, additional rule violations, and clients suffered harm.  *See Dolezal*, 796 N.W.2d at 920

(finding multiple instances of neglect, trust account violations, and harm to a client); *Hoglan*, 781 N.W.2d at 286 (finding multiple instances of neglect and harm to clients). Here, Weiland's misconduct stems from one instance in which he failed to meet appellate deadlines resulting in the administrative dismissal of an appeal. While we did find this conduct violated two of our rules of professional conduct, the Board has not alleged, and we have not concluded, that Weiland's conduct resulted in any harm to the client. Thus, *Wright* and *Tompkins* are closer parallels. *See Wright*, 758 N.W.2d at 230 (involving a single client matter and finding no harm to the client); *Tompkins*, 733 N.W.2d at 669 (finding no harm to clients). Further, as in *Wright*, Weiland's conduct did not amount to neglect. *See Wright*, 758 N.W.2d at 230 (finding a failure to dismiss an appeal did not amount to neglect). Accordingly, we find these cases most instructive in crafting the proper sanction.

Finally, in crafting the proper punishment we consider aggravating and mitigating factors. *Conroy*, 845 N.W.2d at 66. Here, several aggravating and mitigating factors warrant our consideration. We begin by addressing the aggravating factors. "[T]he prior disciplinary history of an attorney is [one] factor we must consider . . . ." *Parrish*, 801 N.W.2d at 589. "In so doing, we consider both prior admonitions and prior public discipline." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 214 (Iowa 2014). "Prior misconduct is more suggestive of increased sanctions when it involves the same type of conduct as the conduct currently subject to discipline." *Id.*

Weiland has been subject to discipline on four prior occasions. First, in 2003, the Board privately admonished Weiland for failing to respond to default notices in an appeal, ultimately resulting in its dismissal. This prior misconduct is an aggravating factor because it is

similar to the misconduct in this case. *See id.* Also in 2003, we publicly reprimanded Weiland for failing to provide competent representation to a client in a probate matter. We do not consider this as an aggravating factor because of the age of this prior discipline and because it is dissimilar to the misconduct in this case. *See Dolezal*, 796 N.W.2d at 920 (declining to consider prior discipline as aggravating factor when prior violations "occurred many years ago" and were not "similar to [the attorney]'s more recent ethical lapses"). In 2008, we publicly reprimanded Weiland for violating several of our ethical rules when he overstated mileage expenses for reimbursements from the State Public Defender for his representation of indigent defendants in court appointed matters. This prior misconduct is an aggravating factor because it occurred more recently. *See id.* Finally, in January 2014, we temporarily suspended Weiland's license to practice law when he failed to respond to a Board inquiry in this matter. We reinstated his license several days later, after he responded to the inquiry. We do not consider this most recent temporary suspension as an aggravating factor because we believe the temporary suspension we imposed was sufficient discipline for failing to respond to the inquiry. *See id.* at 921 (concluding "temporary suspension was adequate discipline for failing to respond to the [B]oard's inquiry").

At the hearing, Wieland conceded that his notice-of-default track record could be considered as part of our determination of an appropriate sanction. We consider his track record to be an aggravating factor. We have previously recognized that using the clerk's office as a private tickler system is unacceptable behavior for an attorney. *See Curtis*, 749 N.W.2d at 699 (characterizing an attorney's use of the clerk's office as a private tickler system as "deplorable"); *Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Moonen*, 706 N.W.2d 391, 400 (Iowa 2005) (disapproving an attorney's use of the clerk's office as a private tickler system). Here, the record established that between 1998 and 2014, Weiland received forty notices of default for failing to meet various deadlines in eighteen appeals. As confirmed by the deputy clerk, this is an excessive number of default notices. However, we lessen our consideration of this as an aggravating factor to an extent because the record also established that Weiland received a large majority of these notices of default much earlier in his career. In fact, Weiland received thirty-three of the forty notices of default between 1998 and 2007, and from 2008 to 2010 Weiland received no notices of default. However, since 2011 Weiland's use of the clerk's office as a private tickler system seems to have reemerged, as evidenced by his receipt of seven notices of default in five separate matters between 2011 and 2014. We are troubled by this recent trend. Consequently, we consider it as an aggravating factor.

We turn now to the mitigating factors. First, the record does not suggest that any clients suffered harm in this case. We consider this a mitigating factor. *See Ricklefs*, 844 N.W.2d at 700 (considering lack of harm to clients a mitigating factor). Second, Weiland ultimately took responsibility for his actions before the commission, admitted that he should have dismissed the appeal once he realized Pierce would be unable able to obtain funds for the transcript, and expressed remorse for his failure to do so. This is also a mitigating factor. *Id.* (considering attorney's taking responsibility for his actions as a mitigating factor). Third, Weiland testified that in the future he will require clients to advance the necessary costs for an appeal prior to proceeding. Further, he testified that if a client is unable to advance these costs after appeal,

he will withdraw as counsel and dismiss the appeal rather than miss deadlines and allow the appeal to be administratively dismissed. This is another mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 295 (Iowa 2011) (considering an attorney's implementation of new office procedures to ensure compliance with deadlines as a mitigating factor). Finally, we note that Weiland maintains a law practice that allows persons of modest means to obtain access to our court system at a modest rate. "Providing legal representation to an underserved part of the community is a significant mitigating factor." *Taylor*, 814 N.W.2d at 268.

The commission recommended we publicly reprimand Weiland for his misconduct. Having considered the particular circumstances in this case, and after our de novo review of the record, we agree with the commission that a public reprimand is appropriate.

**V. Conclusion.**

We publicly reprimand Weiland. Costs are taxed to Weiland pursuant to Iowa Court Rule 35.27.

**ATTORNEY REPRIMANDED.**

All justices concur except Wiggins, J., who dissents.

#15–0156, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*

**WIGGINS, Justice (dissenting).**

Kenneth Weiland's prior disciplinary record and his forty prior delinquency notices from the clerk of the supreme court require a thirty-day suspension.