# IN THE SUPREME COURT OF IOWA

No. 22–0796

Submitted September 15, 2022—Filed October 14, 2022

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**WILLIAM WAYNE RANNIGER,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a public reprimand for attorney–client transactions in violation of the rules of professional conduct. **ATTORNEY REPRIMANDED.**

May, J., delivered the opinion of the court, in which all participating justices joined. Christensen, C.J., took no part in the consideration or decision of the case.

Tara van Brederode, Lawrence Dempsey (until withdrawal), and Allison Anne Schmidt, Des Moines, for complainant.

John C. Gray (until withdrawal) of Heidman Law Firm, P.L.L.C., Sioux City, for respondent, then William W. Ranniger, Manning, pro se.

**MAY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) alleged that William W. Ranniger violated Iowa Rule of Professional Conduct 32:1.8(a) by entering improper business transactions with a client and rule 32:1.8(c) by preparing a will that included a gift to Ranniger's son. Following a hearing, a division of the Iowa Supreme Court Grievance Commission found the Board proved violations of both rules. The commission recommended a public reprimand. Following our review, we find and conclude Ranniger violated rules 32:1.8(a) and 32:1.8(c). We conclude a public reprimand is appropriate.

**I. Background Facts and Proceedings.**

**A. Ranniger's Legal Practice.** William W. Ranniger has been licensed to practice law in Iowa since 1976. Ranniger practices in Manning, Iowa. He has had no previous history of discipline.

Ranniger has had his own practice since 1983.[1] His practice is general, although most of his work involves probate, real estate, and income taxes. Ranniger's daughter, Ashley Moore, is also an attorney. Ashley worked for Ranniger briefly. Ranniger's wife, Deborah, is his secretary.

**B. Ranniger and Lipton's Relationship.** Michael Liggett Lipton (Lipton) was a resident of Manilla, Iowa. He lived in a trailer house on the outskirts of town. It is undisputed that Lipton's financial situation was poor. For example, his 2017 federal income tax returns showed Lipton's only reported income was

---

[1]Ranniger has also served as a magistrate in Crawford County.

$7,691 in social security benefits. His 2020 returns showed $8,071 in social security benefits plus $12,836 in VA benefits.

Lipton and Ranniger had a long relationship. Lipton first met Ranniger when Lipton brought in some legal work for his mother. Then, for approximately twenty years, Ranniger performed legal work for Lipton without charging him. For example, Ranniger defended Lipton against nuisance claims by the city of Manilla. Ranniger also assisted Lipton in obtaining VA benefits. And Ranniger served as Lipton's power of attorney both for financial and medical purposes.

Ranniger and Lipton were also friends. They ate lunch together often; Ranniger always paid. They also had dinner together around holidays, although they never exchanged holiday gifts.

**C. Sales of Property from Lipton to Ranniger.** While Ranniger was serving as Lipton's attorney, Ranniger purchased several pieces of real and personal property from Lipton. Ranniger testified that he bought the property from Lipton when Lipton needed money. Ranniger claimed that he did not negotiate with Lipton. Rather, according to Ranniger, when Lipton proposed a price for a piece of property, Ranniger would simply agree and make the purchase. Here are the particulars:

- In October 2007, Ranniger purchased a forklift for $7,000.
- In September 2009, Ranniger purchased a 1987 Peterbilt semitruck for $8,500.
- In December 2009, Ranniger purchased a grain trailer for $17,000.

- In March 2012, Ranniger purchased three parcels of vacant land in Manilla, Iowa, for $12,000.

- In September 2012, Ranniger purchased a GMC pickup truck for $2,200.

- In March 2013, Ranniger purchased a Buick vehicle for $4,000.

The terms of these transactions were not written down. Ranniger did not advise Lipton in writing about the desirability of seeking independent legal counsel regarding these sales. Additionally, Ranniger did not obtain Lipton's informed written consent to the essential terms of the transactions, e.g., whether Ranniger was representing Lipton in the transactions.

**D. Will Prepared by Ranniger.** In 2017, Ranniger prepared a last will and testament (Will) for Lipton. Lipton signed the Will in May 2017.

Article I of the Will directs the costs of Lipton's "last illness, funeral expenses, costs of administration, and any debts remaining" to be paid from Lipton's estate. Article II leaves photographs and family memorabilia to two of Lipton's cousins. Article III provides "[a]ll the rest, residue and remainder of my property, real, personal and mixed, of which I may die seized or possessed or to which I may be entitled, I give, devise and bequeath to my friend, Nathan Ranniger." Article IV designates Deborah Ranniger as the executor of the Will.

Nathan Ranniger (Nathan) is Ranniger's son. Neither Ranniger nor Nathan was related to Lipton by blood or marriage.

Lipton passed away on March 28, 2021. Ranniger's daughter—Ashley Moore—was responsible for probating Lipton's estate. A probate petition was

filed in Crawford County on March 30, 2021. According to an inventory filed in the probate case, the total gross value of Lipton's assets at the time of his death was $50,143.11.

Pursuant to the Will, five parcels of Crawford County land were transferred from Lipton's estate to Nathan. Nathan is still the owner of those five parcels.

In March 2021, the Crawford County Assessor issued a notice of assessed value for the five parcels. The notice stated these values:

- Parcel #1925101010 - $2,550

- Parcel #1925101011 - $2,550

- Parcel #1925101012 - $2,550

- Parcel #1925101014 - $19,940

- Parcel #1925105007 - $10,710

One of the parcels (#1925101014) includes a structure. The assessed value of the structure is $16,570. According to the parties' stipulation, though, this structure will be removed. So, the net assessed value of this parcel is $3,370.

All told, then, Nathan received real property with a total assessed value of $38,300. Once the structure is removed, the total assessed value of the land will be $21,730.

Nathan also received some personal property from Lipton's estate. He received an older truck, which he sold for $2,500. He also sold some other items for salvage and received $928. And he received $423.50 for items he sold online and at a yard sale. Nathan also received another truck. He still has possession of that vehicle.

Lipton's death also resulted in expenses. Nathan paid an inheritance tax of $3,228.08. Nathan's father, Ranniger, paid $4,070 to a funeral home plus $3,331.76 to Carlyle Memorial. Also, the parcels that Nathan received have junk and debris on them. The city of Manilla believes the junk and debris are a nuisance. Manilla wants it removed. Ranniger received a $9,198 estimate to remove the junk and debris.

All things considered, Ranniger believes the "net amount willed to Nathan" added up to $5,693.16. Here are Ranniger's calculations, as stated in his posthearing brief before the commission:

<u>Assets</u>

| | | |
|---|---|---|
| • | Real Estate (5 lots) less trailer | $21,720.00 |
| • | Older Truck (sold) | $2,500.00 |
| • | Older Truck - needs repair | not a whole lot |
| • | Salvage value | $928.00 |
| • | Items sold at flea market | $423.00 |
| | TOTAL | $25,521.00 |

<u>Liabilities (after other Estate debts paid)</u>

| | | |
|---|---|---|
| • | Carlyle Memorial (paid by [Ranniger]) | $ 3,331.76 |
| • | Funeral Bill (paid by [Ranniger]) | $ 4,070.00 |
| • | Inheritance Tax (paid by Nathan) | $ 3,228.08 |
| • | Templeton Removal of debris | $ 9,198.00 |
| | TOTAL LIABILITIES | $19,827.84 |
| | NET VALUE | $ 5,693.16 |

After learning about the contents of the Will, Lipton's family and friends were concerned that the lawyer's son was inheriting almost all of Lipton's property. Joshua Enenbach is a longtime friend of Lipton. Enenbach helped care for Lipton as his health began to decline. He took care of Lipton's property and

brought him groceries. According to Enenbach, Lipton had told him that he was a beneficiary under Lipton's will. Enenbach filed a complaint with the Board.

Lipton's cousins were also concerned about the Will. It left only photos and family memorabilia to them. Ranniger claims he told the cousins that he would turn over Lipton's estate to them—if they would reimburse him for the cremation and burial expenses. Ranniger claims they were not interested in this deal.

**E. Disciplinary Proceedings.** In October 2021, the Board filed a complaint against Ranniger. It alleged Ranniger violated rule 32:1.8(c) by preparing a will that granted a substantial gift to Nathan. After conducting some discovery, the Board filed an amended complaint. It claimed Ranniger had also violated rule 32:1.8(a) by entering forbidden business transactions with Lipton. Ranniger denied the alleged violations.

Following an evidentiary hearing, the commission determined Ranniger's actions violated rules 32:1.8(a) and 32:1.8(c). The commission recommended a public reprimand.

**II. Scope of Review.**

We review disciplinary proceedings de novo. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Fischer*, 973 N.W.2d 267, 272 (Iowa 2022). "The Board must prove attorney misconduct by a convincing preponderance of the evidence, a burden greater than a preponderance of the evidence but less than proof beyond a reasonable doubt." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 138 (Iowa 2016) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 634–35 (Iowa 2015)). "Admissions may be relied upon to meet

the evidentiary burden of the Board." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Alexander*, 727 N.W.2d 120, 122 (Iowa 2007). "We give the commission's findings and recommendations respectful consideration, but we are not bound by them." *Weiland*, 862 N.W.2d at 635.

### III. Analysis.

**A. Iowa Rule of Professional Conduct 32:1.8(a).** The commission found that Ranniger violated rule 32:1.8(a) by improperly engaging in business transactions with his client, Lipton. The rule states:

> A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless:
>
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
>
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
>
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Iowa R. Prof'l Conduct 32:1.8(a).

A comment to the rule offers this rationale: "[a] lawyer's legal skill and training, together with the relationship of trust and confidence between lawyer and client, create the possibility of overreaching when the lawyer participates in a business, property, or financial transaction with a client, for example, a loan or sales transaction or a lawyer investment on behalf of a client." *Id.* r. 32:1.8 cmt. [1].

Following our de novo review, we conclude Ranniger's actions clearly violated rule 32:1.8(a). Ranniger entered into multiple "business transactions" with his client by purchasing real and personal property items from Lipton. *Id.* r. 32:1.8(a). More specifically: between 2007 and 2013, Ranniger made six purchases from Lipton for a total of $50,700. During this time, Ranniger was serving as Lipton's attorney—and yet Ranniger did not take the steps that rule 32:1.8(a) requires for transactions between attorneys and clients. Ranniger did not reduce the terms of the transactions to writing. *Id.* r. 32:1.8(a)(1). Nor did Ranniger advise Lipton "in writing of the desirability of seeking . . . the advice of independent legal counsel." *Id.* r. 32:1.8(a)(2). Nor did Ranniger obtain "informed consent, in a writing signed by" Lipton, "to the essential terms of the transaction[s]" or Ranniger's "role in the transaction[s]." *Id.* r. 32:1.8(a)(3).

Ranniger argues that the prices he paid to Lipton were fair. If Lipton had offered the same items to other members of the public, Ranniger contends, Lipton would have "receiv[ed] no more than" what Ranniger paid. So, in Ranniger's view, he did not obtain any unfair advantage over Lipton. Rather, according to Ranniger, these transactions were "closer to a standard commercial transaction than a business venture with a client." So, Ranniger claims, rule 32:1.8(a) "should not apply here."

We disagree. For one thing, fairness alone is not enough to satisfy rule 32:1.8(a). *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 122 (Iowa 2013) ("While Dolezal's arrangement was apparently 'fair and reasonable to the client,' that is not all rule 32:1.8(a) requires."). Through its plain text, rule

32:1.8(a) imposes *several* requirements on lawyers who wish to enter transactions with clients. *One* of those requirements is that a transaction's terms must be "fair and reasonable to the client." Iowa R. Prof'l Conduct 32:1.8(a)(1). But even when the transaction is fair and reasonable to the client, the lawyer *still* must comply with the rule's *other* requirements. For example, *even if* the terms are fair and reasonable, the lawyer *must still* fully advise the client "in writing of the desirability of seeking . . . the advice of independent legal counsel on the transaction." *Id.* r. 32:1.8(a)(2). As explained, Ranniger failed to meet this and other requirements of rule 32:1.8(a). So, even assuming the transactions' terms were fair and reasonable to Lipton, Ranniger still violated rule 32:1.8(a).

As Ranniger notes, though, our court has recognized a narrow exception for certain "standard commercial transactions." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Hamer,* 915 N.W.2d 302, 323 (Iowa 2018). Specifically, we have acknowledged that comment 1 to the rule exempts

> standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others, for example, banking or brokerage services, medical services, products manufactured or distributed by the client, and utilities' services. In such transactions, the lawyer has no advantage in dealing with the client, and the restrictions in paragraph (a) are unnecessary and impracticable.

Iowa R. Prof'l Conduct 32:1.8 cmt. [1]; *see Dolezal,* 841 N.W.2d at 123 (noting "comment 1 to the rule exempts 'standard commercial transactions between the lawyer and the client for products or services that the client generally markets to others' " (quoting Iowa R. Prof'l Conduct 32:1.8 cmt. [1])).

But the record doesn't show that Lipton *generally* marketed vehicles, farm equipment, or land to others. *See* Iowa Rule Prof'l Conduct 32:1.8 cmt. [1]. Rather, the record shows only that Lipton sold personal possessions to Ranniger when Lipton needed money. These were individualized sales, not "standard commercial transactions." So, the comment 1 exception does not apply.

Following our de novo review, we conclude Ranniger violated rule 32:1.8(a).

**B. Iowa Rule of Professional Conduct 32:1.8(c).** The commission also found that Ranniger violated rule 32:1.8(c) by preparing a will for Lipton that gave a substantial gift to Ranniger's son. Rule 32:1.8(c) states:

> A lawyer shall not solicit any substantial gift from a client, including a testamentary gift, or prepare on behalf of a client an instrument giving the lawyer or a person related to the lawyer any substantial gift unless the lawyer or other recipient of the gift is related to the client. For purposes of this paragraph, related persons include a spouse, child, sibling, grandchild, parent, grandparent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship.

*Id.* r. 32:1.8(c).

Ranniger concedes that he prepared an instrument "on behalf of a client," Lipton. *Id.* And Ranniger concedes the instrument gave a gift to "a person related to" Ranniger, his son Nathan. *Id.* But Ranniger denies the gift was a "substantial gift." *Id.* Also, Ranniger claims he is "related to" Lipton under the terms of the rule. *Id.* Specifically, although Ranniger concedes they are not related by blood or marriage, Ranniger claims that he and Lipton are "related persons" because they "maintain[ed] a close, familial relationship." *Id.* And so, Ranniger claims, it was proper for him to prepare Lipton's Will.

We first consider whether Ranniger's son received a "substantial gift." Because there is no doubt Nathan received a "gift," we focus on whether it was "substantial." Rule 32:1.0 provides definitions for use throughout the Iowa Rules of Professional Conduct. Paragraph 32:1.0(l) says that when "substantial" is "used in reference to degree or extent," it "denotes a material matter of clear and weighty importance." *Id.* r. 32:1.0(l). This is similar to dictionary definitions. For instance, Merriam-Webster defines substantial as "considerable in quantity: significantly great." *Substantial,* Merriam-Webster, http://www.merriam-webster.com/dictionary/substantial [https://perma.cc/L69Z-9RT3]. And Cambridge Dictionary defines substantial as "large in size, value, or importance." *Substantial,* Cambridge Dictionary, http://dictionary.cambridge.org/dictionary/english/substantial [https://perma.cc/BP5M-S6E8].

Applying these concepts here, we think Nathan received a "substantial" gift. Nathan received almost all of Lipton's property. This included not only significant personal property, like vehicles, but also land. We recognize the land came with special expenses, such as the need to address Manilla's nuisance concerns. But even after factoring in these expenses—and even after considering Lipton's funeral expenses and the inheritance tax—Nathan still received a *net* gift that was worth well over $5,000. And under any relevant definition, we believe five thousand dollars is a "substantial" amount—and a "substantial gift." *See In re Conduct of Schenck,* 194 P.3d 804, 814 (Or. 2008) (en banc) (per curiam) (rejecting attorney's claim that a $1,000 gift to the attorney's wife was not a

"substantial gift"); *cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Den Beste*, 933 N.W.2d 251, 255 (Iowa 2019) (observing that lawyer who misappropriated approximately $9,200 had deprived his employer law firm "of a substantial amount of revenue"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 179 (Iowa 2019) (noting that a check for $2,467 exceeded "by a substantial margin" a lawyer's earned fees of $1,100).

Next, we consider Ranniger's claim that he and Lipton were "related persons" for purposes of rule 32:1.8(c). As noted, the rule defines "related persons" to "include a spouse, child, sibling, grandchild, parent, grandparent, or other relative or individual with whom the lawyer or the client maintains a close, familial relationship." Iowa R. Prof'l Conduct 32:1.8(c). Ranniger does not claim that he and Lipton were "relatives" through blood or marriage. Even so, Ranniger claims they were "related persons" because Lipton was an "individual with whom" Ranniger "maintain[ed] a close, familial relationship." *Id.*

The Iowa Rules of Professional Conduct do not define "close" or "familial." Although dictionaries offer several definitions of "close," the one that appears most relevant is "intimate, familiar." *Close*, Merriam-Webster, http://www.merriam-webster.com/dictionary/close [https://perma.cc/BU2M-KKSE] (capitalization altered). And "familial" means "of, relating to, *or suggestive of* a family." *Familial*, Merriam-Webster, http://www.merriam-webster.com/dictionary/familial [https://perma.cc/KX27-NWLT] (emphasis added). So, as Ranniger emphasizes, the issue does not turn on whether he and

Lipton were *technically* "family." It is enough if their relationship was close and *suggestive of* a "family."

Following our de novo review, we recognize that Ranniger and Lipton had a long attorney–client relationship and a long friendship. And we believe their relationship is properly described as "close." They ate lunch together regularly. They enjoyed each other's company. And Ranniger made gifts to Lipton, such as paying for Lipton's lunch. Ranniger also provided legal services to Lipton without charge. Plus, as explained, Ranniger bought items from Lipton when Lipton needed money. And Ranniger served as Lipton's power of attorney.

Even so, we do not believe their relationship was "familial." Although their *friendship* was close, their relationship was not "suggestive of . . . *family*." *Familial*, Merriam-Webster. Ranniger and Lipton did not raise children together. *See Family*, Merriam-Webster, http://www.merriam-webster.com/dictionary/family [https://perma.cc/4H3V-9CPF] (noting "family" can mean "the basic unit in society traditionally consisting of two parents rearing their children" as well as "any of various social units differing from but regarded as equivalent to the traditional family," such as "a single-parent family" (emphasis omitted)). Ranniger and Lipton did not share a parent or stepparent as siblings and stepsiblings do. *See id.* Ranniger and Lipton were not married—and their relationship was not suggestive of a marriage. *See id.* (noting "family" can mean one's "spouse and children," as in the sentence "I 'want to spend more time with my family.'"). Nor did Ranniger and Lipton live together in a household. *Id.* (noting "family" can mean "a group of individuals living under one roof and

usually under one head," as in the term "household"). Finally, although Ranniger treated Lipton with kindness and even charity, Ranniger and Lipton did not treat each other the way they treated their *families*. As the commission noted:

> Family came to Ranniger's house on holidays. Lipton was not invited. While Lipton and Ranniger would do dinner together, Lipton did not come to family holidays. No gifts were exchanged at Christmas. Lipton did not live with Ranniger. Lipton said he had a lot of family heirlooms, and the family should receive everything. Ranniger notified the family. There is no evidence that Lipton and Ranniger were related, just that they were good friends.

For all of these reasons, we conclude that Ranniger and Lipton were not "related persons" for purposes of rule 32:1.8(c). Accordingly, Ranniger violated rule 32:1.8(c) by preparing a will that gave a substantial gift to his son.

**IV. Sanction.**

As a sanction for Ranniger's violations of rules 32:1.8(a) and (c), the commission recommends that we publicly reprimand Ranniger. "We give the commission's recommendation respectful consideration, but may impose a greater or lesser sanction." *Morse*, 887 N.W.2d at 143.

In this case, we believe six factors deserve mention. First, we note that "sanctions in cases involving improper business transactions between lawyers and clients [generally] range from a public reprimand to revocation." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnston*, 732 N.W.2d 448, 456 (Iowa 2007).

Second, we do not think the violations here show that Ranniger is unfit to practice. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 660 (Iowa 2013). Rather, we assume these were isolated incidents that arose from a particular relationship with a particular person.

Third, we note that Ranniger has no prior disciplinary history. This is a mitigating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 527 (Iowa 2012).

Fourth, "[w]e consider the experience of an attorney to be an aggravating factor." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Willey*, 965 N.W.2d 599, 615 (Iowa 2021). Ranniger has extensive experience—forty-six years in practice. This is an aggravating factor.

Fifth, we consider whether the client was harmed. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinness*, 844 N.W.2d 456, 467 (Iowa 2014). On this record, we cannot say there was much harm, if any. So far as we can tell, Lipton chose to gift his estate to Ranniger's son. Although another lawyer should have prepared the Will, Lipton was ultimately able to give the gift he apparently wished to give. As for the other business transactions, it appears Ranniger paid fair prices for items that Lipton wished to sell. On the other hand, because Lipton is deceased, we do not know what he would say about the sales or the Will.

Finally, we consider the issue of remorse. An attorney's lack of remorse is an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kieffer-Garrison*, 951 N.W.2d 29, 40 (Iowa 2020). And Ranniger shows no remorse for his violations. Instead, Ranniger suggests that his violations were justified because—although he knew about our rules—he "was more concerned with [Lipton's] health and well-being." Ranniger goes on to ask: "Where is the grace given to me for helping a destitute elderly person?" Yet Ranniger does not explain why he couldn't have

complied with rules 32:1.8(a) and (c) *while also* "helping" Lipton. In any event, charitable aims do not justify professional misconduct.

In sum, this case involves isolated transgressions by an attorney who was apparently trying to help out his longstanding client but who nevertheless failed to comply with two important ethical rules. We believe a public reprimand is warranted. This lines up with sanctions we have imposed in similar cases. *See, e.g.*, *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Winkel*, 541 N.W.2d 862, 864 (Iowa 1995) (publicly reprimanding an attorney who drafted a will containing a bequest for himself); *Comm. on Prof'l Ethics & Conduct v. Carty*, 515 N.W.2d 32, 36 (Iowa 1994) (imposing a public reprimand on an attorney for business transactions with a client where the attorney had no prior complaints).

**V. Disposition.**

Following our de novo review, we find Ranniger violated rule 32:1.8(a) by purchasing real and personal property from a client without putting the terms of the transaction in writing, without advising the client of the desirability of seeking independent legal counsel, and without obtaining the client's informed consent in writing. We also find Ranniger violated rule 32:1.8(c) by preparing a will for a client that included a substantial gift to Ranniger's son. We publicly reprimand Ranniger. Costs of this action are assessed against Ranniger pursuant to Iowa Court Rule 36.24(1).

**ATTORNEY REPRIMANDED.**

All justices concur except Christensen, C.J., who takes no part.