# IN THE SUPREME COURT OF IOWA

No. 62 / 07-0132

Filed June 8, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD,**

      Complainant,

vs.

**RICHARD NORTON TOMPKINS, JR.,**

      Respondent.

_____

On review of the report of the Grievance Commission.


Iowa Supreme Court Grievance Commission recommends a thirty-day suspension of the respondent's license to practice law. **ATTORNEY REPRIMANDED.**


Charles L. Harrington and David J. Grace, Des Moines, for complainant.


Richard Norton Tompkins, Jr., Mason City, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board filed a complaint against Richard Norton Tompkins, Jr., with the Grievance Commission of the Iowa Supreme Court alleging Tompkins neglected two matters and failed to respond to the Board's notices. The Commission found Tompkins' conduct violated numerous provisions of the Iowa Code of Professional Responsibility for Lawyers and recommended we suspend Tompkins' license to practice law for thirty days.

We agree with the Commission that Tompkins' conduct occurring prior to July 1, 2005, violated the Iowa Code of Professional Responsibility for Lawyers. We also find that his conduct occurring after July 1, 2005, violated the Iowa Rules of Professional Conduct.[1] We do, however, disagree with the Commission's recommendation that Tompkins' license to practice law be suspended, and instead, publicly reprimand him for his conduct.

### I. Prior Proceedings.

On August 7, 2006, the Iowa Supreme Court Attorney Disciplinary Board filed a two-count complaint against Tompkins alleging he violated various rules of the Iowa Code of Professional Responsibility for Lawyers and the Iowa Rules of Professional Conduct. Count one involved Tompkins' conduct related to his client, Derrick Crume, and count two involved Tompkins' conduct related to his client, Larry Wayne Hull. The complaint charged Tompkins: (1) neglected Crume's case; (2) did not respond to the Board's repeated notices and requests for response regarding Crume's complaint; and (3) without consent, did not appeal Hull's criminal case.

In Tompkins' answer he admitted receiving three notices of Crume's complaint from the Board and failing to respond as required. Tompkins

---

[1]The Iowa Rules of Professional Conduct became effective July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers.

also admitted he represented Hull and without Hull's consent he failed to file and serve the appellant's brief. Tompkins admitted due to this failure he was assessed a $50 fine and Hull's appeal was dismissed.

The Commission found Tompkins violated the Iowa Rules of Professional Responsibility for Lawyers DR 6-101(A)(3) (a lawyer shall not neglect a client's legal matter) and DR 7-101(A)(1) (a lawyer shall zealously represent his clients) when he neglected Crume's legal matter. The Commission also found Tompkins violated DR 6-101(A)(3) when he neglected Hull's appeal. Finally, the Commission found when Tompkins failed to respond to the Board's notices he violated DR 1-102(A)(1) (a lawyer shall not violate a disciplinary rule), DR 1-102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and DR 1-102(A)(6) (a lawyer shall not engage in any other conduct that adversely reflects on the fitness to practice law). The Commission recommended Tompkins be suspended for thirty days with automatic reinstatement upon the expiration of the suspension period.

The Commission's decision was not unanimous. Two of the Commission members filed a joint dissent in this case. The dissent found even though "[i]deally, [Tompkins] should have communicated the lack of available options to Mr. Crume from the start," the record did not affirmatively establish client neglect. Further, the dissent pointed out that although Tompkins' failure to respond to the Board was inappropriate, his conduct did not establish a pattern of this failure. With regard to the Hull complaint, the dissent found Tompkins did not violate the ethics rules because Hull was not prejudiced in light of the ruling in the companion case nor was Hull dissatisfied with Tompkins' representation. The dissent would have imposed a sanction of public reprimand rather than suspension.

## II. Scope of Review.

This court reviews attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Walker*, 712 N.W.2d 683, 684 (Iowa 2006). Ethical violations must be proven by a convincing preponderance of the evidence. *Id.* Even though we consider the Commission's factual findings and discipline recommendations, we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 726 N.W.2d 397, 400 (Iowa 2007). Upon review, this court can impose a greater or lesser sanction than the Commission recommended. Iowa Ct. R. 35.10.

## III. Findings of Fact.

We find the facts as follows. Tompkins was admitted to the Iowa bar in 1976 and practices in Cerro Gordo County. Court-appointed cases make up about one-third of his practice or about thirty cases at any time.

*A. Derrick Crume matter.* On January 21, 2004, a permanency hearing regarding Crume's child was held. The court ordered the child to remain in the care of the Iowa department of human services (DHS) for placement in foster care. A review of this decision was set for July 21.

During the January hearing Crume was represented by another attorney, however, this attorney withdrew because Crume filed an ethics compliant against that attorney. The court appointed Tompkins to represent Crume at the permanency hearing review.

At the time Tompkins was appointed to Crume's case, Crume was incarcerated at the Benton County jail awaiting trial on federal child pornography charges. By March 2004 Crume was convicted of the charges and faced an eleven- to fifteen-year sentence. Additionally, Crume was convicted by the Minnesota courts of third and fourth degree sexual misconduct and is a registered sex offender. These convictions made it

probable that if the mother's parental rights were terminated, Crume's parental rights would also be terminated in order to place the child in a safe and permanent home.

Between the time Tompkins was first appointed to represent Crume until the time he received the first notice of Crume's complaint, Tompkins failed to respond to numerous letters and calls in which Crume made various demands of Tompkins.

One of Crume's demands was that Tompkins return an original letter he had sent Tompkins to copy. Tompkins did not return the letter as requested. At the hearing Tompkins acknowledged it was wrong not to return the letter. Crume also demanded Tompkins provide him the exhibits presented at a previous permanency hearing and specific pages of the Iowa Code. Tompkins did not provide Crume with any of these copies because, in Tompkins' opinion, the documents were not necessary for the case.

Crume was able to reach Tompkins by telephone and talk with Tompkins about gaining access to the mother's psychological evaluation. After this conversation, Tompkins spoke to the judge about releasing the evaluation to Crume. The judge advised Tompkins to make an application to the court to determine whether Crume could have access to the evaluation. Tompkins filed Crume's request for the mother's evaluation with the court. After doing so, he advised Crume of the filing by letter. The application was never set for hearing by the court and no order was entered. Tompkins acknowledged he should have pushed for a hearing, but he did not.

Additionally, Crume requested that Tompkins contact him in order to prepare for the review hearing. However, Tompkins responded to few of

Crume's letters, did a poor job of communicating with Crume, and did not manage Crume's expectations concerning the review hearing.

On June 28 Crume filed a complaint with the Board. Even after filing the complaint, Crume continued to send Tompkins letters, becoming more demanding and insistent that Tompkins respond to his requests. Tompkins received the Board's notification of Crume's complaint on July 14. Also on July 14, DHS and the court appointed special advocate (CASA) issued the case reports prepared for the July 21 hearing. After receiving Crume's complaint, Tompkins decided he needed to withdraw from the case. Tompkins stopped working on the case and filed an application to withdraw and motion for continuance. The application and motion were granted by the court.

Tompkins never responded to the Board's first notification of the complaint as required by our rules. On August 10 the Board sent Tompkins another request to respond to Crume's complaint. Tompkins received the Board's request on August 13, but he did not respond. The Board sent Tompkins a final notice on October 8.

Tompkins admitted he violated the Iowa Rules of Professional Responsibility for Lawyers with regard to his failure to respond to the notices. In explaining why he failed to respond to the Board, Tompkins stated:

> I am not sure. I think that I was so incensed by Mr. Crume's demands and thought that his complaint was so frivolous and it would take so much time, that it was like dignifying it to even respond. I know that it was faulty thinking and I have always preached to others that if you do nothing else, at least respond. I had even discussed the matter with the attorney who represented him before me and against whom Mr. Crume had also made a frivolous complaint, but still I did not respond. Of course I deeply regret my lack of response as it is so stupid not to respond.

*B. Larry Wayne Hull matter.* Although Tompkins stated it was not his choice to represent Hull in his criminal appeal, due to a conflict in the state appellate defender office, Tompkins continued his representation of Hull from trial to appeal. At Hull's request, Tompkins filed a notice of appeal. However, Tompkins did not file a brief with this court. On August 24, 2005, the clerk of the supreme court assessed Tompkins a $50 penalty because he failed to file and serve a proof brief. Under Iowa Rule of Appellate Procedure 6.19(2), Tompkins had fifteen days from service to remedy this default or risk dismissal of the appeal for want of prosecution. Iowa R. App. P. 6.19(2). The clerk also notified Tompkins if the appeal was dismissed as a result of his failure to comply, the Board would be notified of Tompkins' inaction and it may serve as grounds for an investigation of neglect of a client's legal matter. Tompkins did not remedy this default and the appeal was administratively dismissed.

The clerk notified the Board of Tompkins' inaction and possible client neglect. However, Hull did not complain to the Board. Tompkins testified Hull was "quite satisfied with [his] trial work in the case."

Tompkins admitted he should have moved for withdrawal of the appeal rather than simply letting the court administratively dismiss the case. During the hearing Tompkins apologized for not following the proper procedures. However, Tompkins denied his inaction violated the ethics rules. Tompkins claimed he did not violate the rules because Hull's appeal was frivolous in that Hull's co-defendant, Jeffrey Nitcher, had lost his appeal.[2]

---

[2]In *State v. Nitcher*, 720 N.W.2d 547, 560 (Iowa 2006), the case involving Hull's co-defendant, this court found the evidence supported Nitcher's conviction. However, we remanded the case for the district court to rule on Nitcher's motion for new trial using the correct weight-of-the-evidence standard.

**IV. Violations.**

*A. Derrick Crume matter.* Tompkins' alleged misconduct relating to Crume occurred prior to July 1, 2005. Therefore, his conduct is governed by the Iowa Code of Professional Responsibility for Lawyers. Tompkins' failure to respond to the Board's inquiries violates DR 1-102(A)(5) and DR 1-102(A)(6). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moorman,* 729 N.W.2d 801, 804 (Iowa 2007) (failing to respond to the Board's notices violates DR 1-102(A)(5) and DR 1-102(A)(6)); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy,* 722 N.W.2d 199, 204-05 (Iowa 2006) (finding an attorney violated DR 1-102(A)(5) and (6) when he was dilatory in responding to the Board's notices of complaint). Further, even when the complaint is not well-founded, an attorney is not excused from providing necessary information to the Board. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Scheetz,* 568 N.W.2d 663, 664 (Iowa 1997).

The Board also charged Tompkins with a violation of DR 6-101(A)(3). DR 6-101(A)(3) provides "[a] lawyer shall not [n]eglect a client's legal matter." Iowa Code of Prof'l Responsibility DR 6-101(A)(3). Professional neglect usually will involve lawyer "indifference and a consistent failure to perform those obligations that a lawyer has assumed, or a conscious disregard for the responsibilities a lawyer owes to a client." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann,* 712 N.W.2d 89, 94 (Iowa 2006) (citation omitted). "Generally, professional neglect consists of more than a single act or omission and it may involve procrastination." *Id.* at 94-95. "Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy,* 728 N.W.2d 806, 812 (Iowa 2007).

Tompkins was faced with a client with nothing more than time on his hands, making weekly demands on Tompkins' time. Tompkins knew there was not much he could do for Crume until he reviewed the DHS and CASA reports. Although Tompkins did write to Crume on two occasions, he failed to inform Crume of the situation and most of Crume's letters went unanswered. When an attorney neglects his client by repeatedly failing to respond to the client's requests, or keep his client informed about the progression of the case, an attorney violates DR 6-101(A)(3). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gottschalk*, 729 N.W.2d 812, 817-18 (Iowa 2007) (citing a failure to communicate with clearly distraught clients as an instance of neglectful conduct). Accordingly, we agree with the Commission that Tompkins' consistent disregard of Crume's correspondence and his failure to keep Crume informed of the status of the case violated DR 6-101(A)(3).

Additionally, the Board charged Tompkins with a violation of DR 7-101(A). It provides:

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of a client through reasonably available means permitted by law and the disciplinary rules, except as provided by DR 7-101(B). A lawyer does not violate this disciplinary rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of a client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but a lawyer may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

(3) Prejudice or damage a client during the course of the professional relationship, except as required under DR 7-102(B).

Iowa Code of Prof'l Responsibility DR 7-101(A). We do not believe the Board proved a violation of DR 7-101(A).

Tompkins was obligated to represent Crume at the review hearing. Tompkins could not advise Crume of what needed to be done until he received the DHS and CASA recommendations. If DHS and CASA recommended the child should be returned to the mother, Tompkins would have probably advised his client to support the recommendations. If the reports recommended otherwise, Tompkins and Crume likely would have devised a strategy and a position to present at the review hearing based on the reports. These reports were not available to Tompkins until after Tompkins became aware of Crume's complaint. Therefore, Tompkins did not fail to seek the lawful objectives of his client, fail to carry out the contract of employment, or prejudice his client because he was notified of the complaint before he could act on the DHS and CASA reports. Under these circumstances the Board failed to prove Tompkins violated DR 7-101(A).

*B. Larry Wayne Hull matter.* Tompkins' alleged misconduct involving Larry Wayne Hull occurred after July 1, 2005. Therefore, his conduct is governed by the Iowa Rules of Professional Conduct.

Under Iowa Rule of Appellate Procedure 6.104(1), if Tompkins determined "after [a] conscientious investigation of the entire record . . . that the appeal is frivolous and that [he] cannot, in good conscience, proceed with the appeal, [he] may move the supreme court in writing to withdraw." Iowa R. App. P. 6.104(1). When doing so he must also "advise the defendant in writing of the decision as to frivolousness accompanied by a copy of counsel's motion and brief." *Id.* 6.104(2). This allows the defendant the opportunity to pursue the appeal even if counsel advises

against it. *Id.* 6.104(4). Tompkins admitted he should have moved for withdrawal from the Hull appeal rather than simply letting the court administratively dismiss the case. However, he argued because the outcome would have remained the same, no ethical rule was violated.

Nevertheless, even when a client instructs an attorney to fail to comply with appellate deadlines so that the appeal can be administratively dismissed, this court has found the attorney neglected the appeal. *Comm. on Prof'l Ethics & Conduct v. Thomas,* 495 N.W.2d 684, 686 (Iowa 1993). The burden is on the attorney to comply with the appellate deadlines regardless of a client's instruction or interest in the case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen,* 712 N.W.2d 101, 105 (Iowa 2006) (citing Iowa R. App. P. 6.19). "Unless the court relieves an attorney of his or her responsibility to the client on appeal, as an officer of the court, the attorney is required to file the appropriate documents and briefs." *Id.* If an attorney fails to comply with appellate deadlines, this conduct constitutes neglect and amounts to conduct that is prejudicial to the administration of justice. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett,* 653 N.W.2d 377, 380 (Iowa 2002). "To simply wait for the court to dismiss the case for lack of prosecution is neglect, inappropriate, and unethical." *Lesyshen,* 712 N.W.2d at 105. Such handling of appellate matters is a disservice to the client and the judicial system. *McCarthy,* 722 N.W.2d at 204.

Under the Iowa Rules of Professional Conduct, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Iowa R. of Prof'l Conduct 32:1.1. As a comment to the rule states, "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal

elements of the problem, and use of methods and procedures meeting the standards of competent practitioners." *Id.* 32:1.1 cmt. 5.

At the time Tompkins received the default notice from the clerk of the supreme court, our rules required him to file his brief or move under rule 6.104 that the appeal is frivolous. Consequently, Tompkins' disregard of the default notice demonstrates his incompetence in handling the appeal and constitutes a violation of rule 32:1.1.

Another rule implicated by Tompkins' failure to file his brief or move under rule 6.104 is rule 32:1.3. This rule requires "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. A comment to the rule indicates, "[u]nless the relationship is terminated as provided in rule 32:1.16, a lawyer should carry through to conclusion all matters undertaken for a client." *Id.* 32:1.3 cmt. 4. Hull was satisfied with Tompkins' services at trial and did not dismiss Tompkins as his attorney on the appeal. Accordingly, Tompkins' failure to follow through with the appeal is a violation of rule 32:1.3.

Finally, rule 32:8.4(d) states, "[i]t is professional misconduct for a lawyer to: . . . (d) engage in conduct that is prejudicial to the administration of justice." *Id.* 32:8.4(d). Again, a comment is helpful in explaining a lawyer's obligation under rule 32:8.4(d). The comment states:

> A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 32:1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law apply to challenges of legal regulation of the practice of law.

*Id.* 32:8.4(d) cmt. 4. Tompkins' failure to comply with the default notice was not done with a good faith belief that the notice did not require compliance. Our case law makes it clear that an attorney cannot use a default notice to dismiss an appeal in lieu of the attorney's obligation to comply with our

appellate rules. *Moorman*, 683 N.W.2d at 552. Therefore, disregarding the default notice violates rule 32:8.4(d).

## V. Sanctions.

To determine Tompkins' sanction,

> we consider the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and the court's duty to uphold the integrity of the profession in the eyes of the public. We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Powell*, 726 N.W.2d at 407-08 (internal quotation and alteration omitted). The goal of our ethics rules is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." *Id.* at 408 (internal quotation omitted).

Generally, in attorney disciplinary cases involving neglect alone, this court has imposed discipline ranging from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Frerichs*, 718 N.W.2d 763, 767 (Iowa 2006). When neglect is compounded by other misconduct, a more severe sanction may be required. *Id.* When determining the sanction, an important factor for this court to consider "is the prejudice caused by the neglect." *Joy*, 728 N.W.2d at 815.

Tompkins neglected his representation of Crume by failing to communicate with Crume and respond to his inquiries. Further, without his client's consent, Tompkins allowed Hull's appeal to be administratively dismissed, neglecting his client, and wasting judicial resources. However, it seems little prejudice was caused to either Crume or Hull.

Considering Crume's status as a sex offender, current sentence for child pornography, and past criminal history, Crume almost certainly would not have successfully maintained his parental rights if the mother's rights

were terminated. Also, Hull likely was not prejudiced by Tompkins' failure to follow through on his appeal. Hull's co-defendant, Nitcher, appealed his conviction on the same grounds as Hull. We affirmed Nitcher's convictions, and only remanded the case to the district court for the court to apply the correct standard of review on a motion for new trial. *State v. Nitcher*, 720 N.W.2d 547, 560 (Iowa 2006). The Board did not present any evidence indicating Nitcher was granted a new trial on remand. We can assume Hull would have received the same ruling on his motion for new trial because Hull joined in Nitcher's motion for new trial.

Further, there are aggravating factors in the record. This is not Tompkins' first disciplinary action. *See Frerichs*, 718 N.W.2d at 768 (stating "we must consider [an attorney's] previous disciplinary problems"). In 1987 Tompkins received a two-year suspension for unlawfully entering residences and searching for women's undergarments he used to sexually gratify himself. *Comm. on Prof'l Ethics & Conduct v. Tompkins*, 415 N.W.2d 620, 624 (Iowa 1987). Since that suspension Tompkins sought treatment for his sex addiction, has been readmitted to the practice of law, and continues to be treated for his addiction. There is nothing in the record to indicate his addiction affects his present practice of law.

In 1997 he also received a public reprimand for neglecting a client matter. In 1998 he received another public reprimand for charging a non-refundable minimum fee.

Considering the nature of Tompkins' violations, the protection of the public, deterrence of similar misconduct by others, Tompkins' fitness to practice, our duty to uphold the integrity of the profession in the eyes of the public, aggravating circumstances, mitigating circumstances, and the sanction we have given in similar cases, we believe the appropriate sanction

for Tompkins' neglect and failure to respond to the Board's notices is a public reprimand. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 207-08 (Iowa 2007) (publicly reprimanding an attorney for neglect of one client matter even though the attorney had two prior admonitions and one public reprimand); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Alexander*, 727 N.W.2d 120, 122-23 (Iowa 2007) (publicly reprimanding an attorney where the attorney admitted the charge of neglect, but failed to respond to the Board's notice of investigation); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sherman*, 619 N.W.2d 407, 410 (Iowa 2000) (publicly reprimanding an attorney for neglect of one client matter and his failure to respond to the Board's inquiries even though the attorney had previously been barred from appellate practice for two years due to neglect and was also publicly reprimanded for neglect); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Erbes*, 573 N.W.2d 269, 270-71 (Iowa 1998) (publicly reprimanding an attorney for his neglect of a client matter and failure to cooperate with Board); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mears*, 569 N.W.2d 132, 134-35 (Iowa 1997) (publicly reprimanding an attorney for his neglect of two matters even though the attorney had three prior admonitions for undue delays in processing clients' matters).

## VI. Disposition.

We impose a public reprimand on Tompkins rather than the suspension recommended by the Commission. We tax the costs of this action to Tompkins pursuant to Iowa Court Rule 35.25.

**ATTORNEY REPRIMANDED.**