# IN THE SUPREME COURT OF IOWA

No. 15–1227

Filed December 4, 2015

Amended February 12, 2016

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**PAUL ARTHUR SILICH,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

An attorney contends the grievance commission's recommended sanction for violation of disciplinary rules is excessive. **LICENSE SUSPENDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Paul A. Silich, Epworth, pro se.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Paul Silich, charging him with violating Iowa attorney disciplinary rules in connection with his representation on one case and his failure to cooperate with the Board. A division of the Grievance Commission of the Supreme Court of Iowa found he violated several rules and court orders during his protracted handling of a Medicare lien and in responding to the Board. The commission recommended a sixty-day suspension. Silich admits the factual basis for the complaint, but argues his client was not harmed and the thirty-three months it took to resolve the lien was beyond his control. On our de novo review, we find Silich violated several rules and suspend his license to practice law for thirty days.

## I. Background Facts and Proceedings.

Paul Silich is an attorney who practiced in Dubuque County, Iowa. Silich was admitted to the bar in 2003. In 2011, he was publicly reprimanded for neglect, inadequate client communication, and failure to expedite litigation. Today's case arose from Silich's handling of a Medicare lien on a tort settlement as he was winding up his law practice.

**A. The Sanderson Representation.** In 2008, Nancy Sanderson fell out of her motorized wheelchair and broke her femur while home alone. Silich agreed to represent her in a personal injury action against the wheelchair manufacturer and retailer. Silich filed a civil action on August 31, 2010, against those parties seeking damages for Sanderson's injuries and for her sixteen-year-old son's loss of consortium. The defendants denied liability and alleged Sanderson caused her injuries by failing to wear the wheelchair's seat belt. Sanderson claimed she had been wearing the seat belt at the time of her accident. Silich proceeded

with discovery and had scheduled depositions when Sanderson died unexpectedly on January 17, 2011. Her testimony had not been perpetuated by deposition. Silich thus no longer had a witness to rebut the defense theory that the accident resulted from Sanderson's failure to use the seat belt.

On March 9, Clinton National Bank (the bank) opened Sanderson's estate and was appointed administrator of the estate.[1] On August 9, Silich filed a motion in the personal injury action to substitute parties. The motion sought to replace Sanderson personally with the bank as administrator for Sanderson's estate and add her son's conservator as plaintiffs. The district court allowed the amendment. Silich regarded the estate administered by the bank and the son's conservator as his clients.

In December, Silich contacted Jerry Van Scoy, the bank's attorney, to discuss settling the personal injury case. Silich noted the case would be difficult to win without Sanderson's testimony. On December 27, the bank authorized Silich to settle the case for $25,000. Within ten days, Silich reached a settlement with the defendants who agreed to pay $25,000 conditioned on resolving any Medicare lien. Silich did not get that lien resolved until September 2014—two years and nine months later. He kept his clients in the dark as to his progress or lack thereof during much of that period despite contempt hearings and court orders to provide information. Silich allowed over seven months to transpire before responding to one request from the lienholder and delayed up to six months responding to other requests for information from his client

---

[1]The bank petitioned the court to open the estate in order to administer Sanderson's real property, a home mortgaged by the bank.

or the lienholder. The timeline of his activity was undisputed and chronicled by the commission.

On January 6, 2012, Silich wrote to the Medicare Secondary Payer Recovery Contractor (MSPRC) to report the settlement and to request "a final itemization of any claimed amounts as soon as possible." Silich asked the MSPRC to provide a release of any Medicare lien that arose from paying Sanderson's medical bills. On January 23, Silich updated Van Scoy and the attorney for the conservatorship. Silich told them he believed the MSPRC would be willing to waive its lien in light of the "significant compromise" reached in the settlement. Sanderson had been the only witness to the accident, and her death created proof problems justifying the low-dollar recovery.

On February 28, the probate court approved the settlement subject to release of any Medicare lien. The settlement proceeds were allocated sixty percent to the son and forty percent to the estate. The parties agreed that Silich would negotiate with Medicare to seek a reduction and release of its lien. On March 19, the MSPRC asked Silich to provide documentation of the administration of the estate and confirm Silich's authority to receive information on behalf of the estate. On April 5, Silich provided this information to the MSPRC by letter and asked "for an itemization of any conditional payments that Medicare claims are related to the [Sanderson] claim."

On May 28, the MSPRC sent a conditional payment letter to the bank to give notice that there may be a lien on any settlement proceeds from the personal injury action. The letter identified $48,687 in medical expenses paid by Medicare that MSPRC attributed to Sanderson's accident. Van Scoy forwarded the letter to Silich who replied to the MSPRC on July 23. Silich told the MSPRC to communicate with him

directly and argued it should waive any lien. Silich's letter showed a "cc" to Van Scoy, but Van Scoy denied receiving it.

On August 28, the bank filed its first interlocutory report in the probate case. The report indicated that all of the remaining work was contingent on Silich resolving the Medicare lien. The estimated time to complete was listed as "unknown."

On October 3, Silich updated Van Scoy on the status of the Medicare lien. He wrote that he had spoken with an MSPRC representative who said the file would be reviewed by a regional official. Silich did not have a timeline for when the matter would be resolved, but he promised to provide updates as the matter progressed. On November 5, Silich received a letter from the MSPRC indicating it could not correspond with him without proper proof of representation.

Van Scoy requested updates on the Medicare lien on November 27 and January 10, 2013. Silich failed to reply to either request. On March 4, Van Scoy filed a motion in the probate proceeding for a scheduling status report because he had not had any contact with Silich for five months. The court set a status hearing for March 29, with an order directing Silich to provide a detailed status report. Silich, who had changed addresses, apparently never received the order setting hearing and did not attend.

On March 29, Van Scoy moved for Silich to be held in contempt of court. The conservatorship joined in the contempt motion. The court ordered a hearing to show cause for April 24. Silich appeared at that hearing. The hearing was the first contact Silich had with his clients in nearly seven months. Van Scoy expressed frustration at Silich's handling of the Medicare lien. Van Scoy said he was unable to tell what Silich was doing to resolve the lien, despite repeated requests for

updates. Silich admitted that he "probably could have kept [Van Scoy] in the loop a little better." Silich reported he was in the process of winding up his practice, and this was his last paper file. Silich said that he had been speaking with the MSPRC about the lien. He claimed the delays with the MSPRC were due to the lack of a written settlement agreement. Silich said that he expected a response from the MSPRC within sixty to ninety days. The court continued the matter until July 31 and ordered Silich to forward to Van Scoy copies of "all communications of any sort whatsoever between himself [and] his office and Medicare personnel."[2] Van Scoy expressed concern that Silich would fail to comply with the order and suggested Silich talk to his professional liability insurance carrier about the matter. Silich repeated that the delay was due to "this bureaucracy," and there was nothing he could have done differently.

On June 17, over seven months since his last communication with the MSPRC, Silich wrote to request the status of the lien. He enclosed a copy of a final settlement detail document. On July 28, Silich by email told Van Scoy he had talked to someone by phone and there would be a letter memorializing the conversation. At the hearing on July 31, Van Scoy asked the court to treat the hearing as a contempt hearing based on Silich's failure to comply with the court's order to forward all communications to the bank. Silich admitted he sent the letter to the MSPRC on June 17 without copying Van Scoy. Silich said he called the MSPRC thirty days after he sent the letter to follow up. The MSPRC representative told Silich the final demand would be sent shortly. Silich had not communicated with Van Scoy about either of these

---

[2]The attorney for the conservatorship attended the hearing and agreed to the reporting requirement without asking to be copied on updates.

communications with the MSPRC. Silich argued he lacked control over the pace of MSPRC's decision-making and was frustrated by its delays. Silich stated he was not sending updates to Van Scoy because he had "nothing substantive" to report. He characterized his failure to comply with the court's order as an "oversight."

The district court found that Silich "had not substantially complied with the April 24 order" and noted Silich's "lack of due diligence" and that his efforts to resolve the Medicare lien had been "few and far between." The court ordered Silich to provide Van Scoy with copies of all prior communications on the Medicare lien within thirty days and to take steps to remove the tort action from the strike list to prevent dismissal for failure to prosecute. The court further ordered Silich to report back in seven days with confirmation from the MSPRC that it had received all the documents needed and a time estimate for how long it would take to resolve the lien. The court set the next hearing for September 18.

Silich sent a letter to the MSPRC on August 1 with a copy to Van Scoy. In addition to the information required by the court, Silich requested verification of his July 29 conversation with a representative, who he identified by first name and ID number.

The MSPRC by letter dated August 14 asserted a $16,666 lien. Silich failed to submit that letter to the court as ordered. Silich emailed the letter to the bank on August 31, but mistakenly only included the odd-numbered pages. Upon prompting from the bank's office, Silich sent the complete letter on September 9. With the long-awaited lien demand from the MSPRC in hand, the defendants paid the $25,000 settlement to the bank in trust. The parties continued the September 18 hearing.

On September 24, the bank filed a second interlocutory report. The remaining work to close the estate and disburse funds was all

contingent on resolving the lien. The estimated time of completion remained "unknown."

On October 1, two months after the contempt hearing, the personal injury case was put on the strike list. Silich did not take any steps to remove the case from the strike list despite the court order. Van Scoy sent Silich two checks to pay the Medicare lien on November 4. Van Scoy requested a written confirmation once Silich received the funds. On the same day, Van Scoy sent Silich signed copies of a dismissal with prejudice and the release agreements. Van Scoy instructed Silich to return the signed dismissal with prejudice, and Van Scoy would file it. Silich never returned the document or acknowledged receiving the funds. On November 5, the court dismissed the tort action without prejudice, finding "no alternative order was entered" before the October 31 deadline.

On November 27, three weeks after receiving the checks, Silich sent a letter to the MSPRC enclosing the checks to pay off the lien. The letter also requested the MSPRC to waive or reduce the lien and refund the balance. The letter qualified as a timely appeal of the lien under the applicable agency rules. Silich failed to send a copy to Van Scoy.

The court held another hearing on December 11. Silich gave Van Scoy a copy of the letter at the hearing. Silich again admitted he had failed to send Van Scoy all of his communications with Medicare since the previous hearing. Silich emphasized he was not intentionally delaying the case. The court, however, stated in its order, "Silich undertook virtually no action between August and November [27] to appeal or seek a waiver of the Medicare lien." The court also criticized Silich for failing to copy Van Scoy on all communications "inexplicably, and in spite of at least two court orders requiring him to do so." The

court declined to find Silich in contempt, but referred the matter to the Board.

On January 30, 2014, Van Scoy requested an update. Silich responded on February 17 that the MSPRC's decision would be issued in thirty days. Left in the dark, Van Scoy requested another update on April 8. Silich did not respond.

On May 7, the bank moved to close the estate and informed the probate court the Medicare lien had been paid but that "Silich ha[d] been unresponsive to request for further information regarding the status of the Medicare lien appeal/waiver." The estate had been unable to contact Silich for approximately three months. The court approved the final report on May 27, and the estate was closed that day.

On September 23, the estate received an $11,745.30 Medicare refund. The next day, the bank petitioned to reopen the estate to distribute the funds, and the petition was granted.

On October 9, thirty-three months after Silich first contacted the MSPRC about the conditional settlement, Silich emailed Van Scoy to inform him the appeal was decided favorably. The MSPRC had agreed to the refund of $11,745.30 after deducting costs unrelated to the hospitalization immediately after the accident. On October 20, the estate was closed again, four years and ten months after Sanderson's death.

**B. Disciplinary Proceedings.** Silich received a copy of the Board's demand for information on December 28, 2013, while the Medicare lien matter remained pending. Silich responded to the Board on January 22, 2014, by asking for fourteen additional days to submit a response. The Board granted his request and gave Silich until February 11 to respond. Silich failed to do so. He received delinquency

notices from the Board on May 19 and September 30.[3] Silich finally responded on October 20, over ten months after receiving the initial demand for information. On December 5, Silich was suspended from practicing law for failure to comply with the continuing legal education and client security requirements.

The Board filed its complaint on February 27, 2015, alleging Silich violated Iowa Rules of Professional Conduct 32:1.3, 32:1.4, 32:3.2, 32:3.4(c), 32:8.1(b), and 32:8.4(d). On April 1, Silich filed his answer, admitting the facts alleged in the complaint, but denying he violated any ethical rules.

The commission conducted an evidentiary hearing on May 29, 2015. Van Scoy testified regarding Silich's failure to communicate, the Medicare lien, and the additional work and expense necessary to obtain information from Silich, including three court hearings. Van Scoy explained that Sanderson's home—the reason the bank had opened the estate—sold in autumn 2011, and the tort settlement was reached that December. Yet, the estate could not be finally closed until over three years later when Silich finally resolved the Medicare lien.

Silich testified he was winding up his practice during that time. Although he had a few other cases, he looked for other employment to make ends meet. In 2012, Silich began working full-time in Madison, Wisconsin, in the disability insurance field. From June 2013 through May 2014, he also began working part-time at Menards to pay expenses.

Silich did not object to any of the Board's exhibits, stating, "They all speak for themselves as far as the scenario that went on." He

---

[3]The Board initially mailed the notice on April 10, 2014, but the letter was returned as undeliverable.

acknowledged the estate and the conservatorship were his clients. Silich testified he was frustrated at the MSPRC's handling of the lien. He explained he was unable to secure a "contact" at the MSPRC. He conceded his communication with the bank was "lacking." He said the reason he failed to reply to the Board's complaint was that he thought the complaint would go away once the lien was resolved.

On July 20, the commission released its findings of fact, conclusions of law, and recommendations. The commission found Silich's handling of the Medicare lien violated rules of professional responsibility 32:1.3 (due diligence), 32:1.4 (client communication), 32:3.2 (expediting litigation), 32:3.4(c) (obligations to a tribunal), and 32:8.4(d) (conduct prejudicial to the administration of justice). The commission further found Silich's dilatory responses to the Board violated rules 32:8.4(d) as well as 32:8.1(b) (cooperation with Board). The commission recommended a sixty-day suspension.

## II. Scope of Review.

We review attorney disciplinary proceedings de novo. Iowa Ct. R. 35.11(1). The Board has the burden to prove misconduct by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 697 (Iowa 2014). This burden of proof is greater than a preponderance of the evidence but less than proof beyond a reasonable doubt. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 634–35 (Iowa 2015). "We give the commission's findings and recommendations respectful consideration, but we are not bound by them." *Id.* at 635.

### III. Ethical Violations.

Silich's answer to the Board's complaint admitted all of the underlying facts of this case. Silich denied that his conduct violated any ethical rules. "Factual matters admitted by an attorney in an answer are deemed established, regardless of the evidence in the record." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013). Nonetheless, we review the Board's allegations de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 179 (Iowa 2015). Upon our de novo review, we conclude Silich committed several violations.

**A. Neglect.** Our rules of professional responsibility no longer expressly refer to neglect, but we continue to sanction neglect through several rules. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 63–64 (Iowa 2014). As we noted in *Conroy*,

> [n]eglect involves an attorney's consistent failure to perform his or her obligations and indifference about failing to advance the interests of his or her client. In addition, neglect may involve a conscious disregard for a lawyer's responsibility to his or her client.

*Id.* (citations omitted). We have recognized that rules 32:1.3 (due diligence), 32:1.4 (client communication), and 32:3.2 (expediting litigation) all sanction neglect. *Id.* at 64 (collecting cases). We address each rule separately.

1. *Due diligence.* Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. The commission found Silich violated this rule. Persistent delays in handling a client's case violate rule 32:1.3. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 121 (Iowa 2013). As the comment to this rule notes, "Even when the client's

interests are not affected in substance, however, unreasonable delay can cause a client needless anxiety and undermine confidence in the lawyer's trustworthiness." Iowa R. Prof'l Conduct 32:1.3 cmt. 3.

In *Iowa Supreme Court Attorney Disciplinary Board v. Lemanski*, we found the Board failed to prove a violation of this rule when an attorney took nearly eighteen months to resolve a Medicare subrogation lien:

> [T]he only evidence in the record to show that Lemanski failed to act with reasonable diligence in resolving the subrogation issue was evidence that it took him nearly eighteen months to complete the task. While this time period seems inordinately long, Lemanski explained the difficulties he encountered in his attempts to deal with the contractor. These difficulties were exacerbated by the inability of the contractor to locate the records following a move of their offices from Detroit, Michigan, to Oklahoma City, Oklahoma. The Board made no finding Lemanski was not credible, and there was some evidence in the record that other attorneys have experienced problems and delays in dealing with Medicare subrogation contractors.

841 N.W.2d 131, 133 (Iowa 2013). By contrast, Silich took over thirty-three months to resolve the Medicare lien. We are not persuaded by his effort to shift blame for the delay to the federal contractor. Silich repeatedly waited months to respond to inquiries from the MSPRC or his clients. Indeed, during 2012 and 2013, he waited over seven months to respond to an inquiry from the MSPRC. Silich's conduct undermined his client's confidence in his work to the extent that Van Scoy suggested Silich report the matter to his legal malpractice insurer and scheduled three court hearings to address Silich's neglect. We conclude the Board proved by a convincing preponderance of the evidence that Silich's lack of diligence violated rule 32:1.3.

2. *Client communication.* The commission found Silich violated rule 32:1.4, which requires attorneys to "keep the client reasonably informed about the status of the matter" and "promptly comply with

reasonable requests for information." Iowa R. Prof'l Conduct 32:1.4(a)(3), (4). The comment to rule 32:1.4(a)(4) states:

> A lawyer's regular communication with clients will minimize the occasions on which a client will need to request information concerning the representation. When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected.

*Id.* cmt. 4. "Violations of this rule occur when an attorney neglects to keep a client informed about the status of the case or does not respond to a client's attempts to contact the attorney about the case." *Nelson*, 838 N.W.2d at 537. An attorney's repeated failure to respond to a client's request for information violates this rule. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 657 (Iowa 2013).

In *Lemanski,* we found an attorney violated this rule by failing to update his client. 841 N.W.2d at 133. Lemanski took nearly eighteen months to resolve a Medicare lien due to his difficulties contacting the Medicare subrogation contractor. *Id.* We found he violated this rule by "fail[ing] to keep his client reasonably informed about the progress of the subrogation matter." *Id.*

Silich admitted that his communication with Van Scoy was "lacking." In 2012 and 2013, Silich failed to update his client for nearly seven months despite repeated requests for information. As noted, Silich's failure to respond to Van Scoy's repeated requests for information prompted Van Scoy to set three hearings to obtain information by court order and seek sanctions. Even after the court twice ordered Silich to communicate more regularly with Van Scoy regarding the Medicare lien, Silich failed to do so. We find Silich violated rule 32:1.4.

3. *Expediting litigation.* The commission found Silich violated rule 32:3.2, which states, "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. Prof'l Conduct 32:3.2. "We require lawyers to make reasonable efforts to expedite litigation because '[d]ilatory practices bring the administration of justice into disrepute.' " *Weiland*, 862 N.W.2d at 636 (quoting Iowa R. Prof'l Conduct 32:3.2 cmt. 1). In *Weiland*, we found an attorney violated this rule by missing appellate deadlines and allowing his client's "appeal to languish and be administratively dismissed." *Id.* at 637. We have found violations of this rule when an attorney has failed to comply with procedural timelines, appear for status conferences, and respond to court inquiries. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hedgecoth*, 862 N.W.2d 354, 362 (Iowa 2015). In *Conroy*, we found the attorney violated this rule by his "failure to move litigation along" when he missed deadlines and failed to file documents or pursue appeals. 845 N.W.2d at 65.

Silich likewise allowed the probate proceedings to languish by his dilatory efforts to resolve the Medicare lien. For example, he waited up to seven months to respond to a request for information from the MSPRC and ultimately took thirty-three months to conclude his appeal of the amount of the lien. He also violated rule 32:3.2 by disregarding the court's order to remove the civil case from the strike list. *See Weiland*, 862 N.W.2d at 637. "To simply wait for the court to dismiss the case for lack of prosecution is neglect, inappropriate, and unethical." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lesyshen*, 712 N.W.2d 101, 105 (Iowa 2006). The estate remained open for an unreasonable length of time due to Silich's poor communication and lack of diligence in

resolving the Medicare lien. We conclude the Board proved by a convincing preponderance of the evidence that Silich violated rule 32:3.2.

**B. Other Violations.** The commission also found Silich violated several other rules by failing to comply with court orders and the Board's inquiries.

1. *Obligations to a tribunal.* Rule 32:3.4(c) states it is professional misconduct to "knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Iowa R. Prof'l Conduct 32:3.4. This rule, entitled "Fairness to opposing party and counsel," is intended to maintain fair competition in the adversary system. *See id.* r. 32:3.4 cmt. 1 ("The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties. Fair competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like."). We require proof that the attorney's conduct "undermined the competitive fairness of the adversary process or disadvantaged opposing counsel." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hearity*, 812 N.W.2d 614, 620 (Iowa 2012).

We find Silich did not violate this rule because Van Scoy was not his "opposing counsel" but, rather, jointly represented the bank as administrator of the Sanderson estate. Rule 32:3.4 protects opposing parties and counsel, not clients. *See id.* We recognize that Van Scoy pursued contempt sanctions against Silich, and their attorney–client relationship became adversarial. Nevertheless, we have not extended the rule to sanction an attorney for failing to provide information to his own client or cocounsel, and we decline to do so here because that

misconduct is addressed in other rules. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 177 (Iowa 2013) (declining to extend rule 32:3.4 to a lawyer representing himself). Therefore, we find the Board has not proven Silich violated rule 32:3.4(c).

2. *Demand for information from the Board.* The commission found Silich violated rule 32:8.1(b), which states it is professional misconduct to "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority." Iowa R. Prof'l Conduct 32:8.1(b). This rule reflects that " 'we expect and demand that attorneys cooperate with discipline investigations.' " *Hedgecoth*, 862 N.W.2d at 363 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sullins*, 556 N.W.2d 456, 457 (Iowa 1996)); *see also Lemanski*, 841 N.W.2d at 133 (finding a violation of rule 32:8.1(b) for failing to respond to Board inquiries).

The Board granted Silich an extension at his request to February 11, 2014, to respond to its inquiry letter, yet he failed to respond further until October 20. His explanation—that he thought his resolution of the Medicare lien would resolve the ethics matter—does not excuse his failure to respond. Attorneys must be responsive to the Board's inquiries. We find that Silich violated rule 32:8.1(b).

3. *Conduct prejudicial to the administration of justice.* The commission found Silich violated rule 32:8.4(d), which states, "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." Iowa R. Prof'l Conduct 32:8.4(d). To violate this rule, the attorney's conduct "must hamper ' "the efficient and proper operation of the courts or of ancillary systems upon which the courts rely" ' by violating the well-understood norms and conventions of the practice of law." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 605 (Iowa 2011) (quoting *Iowa Supreme Ct.*

*Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010)). Conduct that wastes judicial resources violates this rule. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 534 (Iowa 2011). " 'An attorney's failure to timely cooperate with disciplinary authorities is prejudicial to the administration of justice, violating not only rule 32:8.1 but also rule 32:8.4(d).' " *Hedgecoth*, 862 N.W.2d at 363 (quoting *Nelson*, 838 N.W.2d at 540).

Silich failed to obey two court orders requiring him to provide the bank with copies of all his communications with the MSPRC. Silich's omissions and poor communication with his clients necessitated three additional court hearings. Silich also failed to timely respond to the Board's inquiries. We find that Silich violated rule 32:8.4(d).

**IV. Sanction.**

The commission recommends we suspend Silich's law license for sixty days to begin after his current suspension. We give the commission's recommendation respectful consideration, but may impose a greater or lesser sanction. *Ricklefs*, 844 N.W.2d at 697. "There is no standard sanction for particular types of misconduct." *Clarity*, 838 N.W.2d at 660. We weigh several factors, including

> "the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Id.* (quoting *Rhinehart*, 827 N.W.2d at 182).

The Board does not recommend a specific sanction but asks us to consider Silich's prior disciplinary offenses, pattern of misconduct, and experience as aggravating factors. Silich likewise does not ask for a

specific sanction but requests that we consider the MSPRC's role in the delays and contends no client was harmed.

We agree with the Board and commission that Silich's prior public reprimand was for similar misconduct and is an aggravating factor. *See Lemanski*, 841 N.W.2d at 134. We publicly reprimanded Silich in 2010 for lack of diligence, failure to comply with a court ruling, inadequate communication, and failure to expedite litigation. Another aggravating factor is Silich's failure to timely respond to the Board's investigation. *See Hearity*, 812 N.W.2d at 622.

Although the prior public reprimand noted Silich suffered from depression, Silich testified at the 2015 hearing that his depression was irrelevant to this case. We therefore decline to consider his depression as a mitigating factor. *See Dolezal*, 796 N.W.2d at 921 (finding an attorney's refusal to attribute his conduct to his depression limited this court's ability to rely on depression as a mitigating factor).

Silich has been under suspension since December 5, 2014, for failure to comply with continuing legal education and client security requirements. We do not consider such a suspension "as a mitigating factor that can serve to reduce the discipline otherwise warranted by his misconduct." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Adams*, 623 N.W.2d 815, 819 (Iowa 2001) (imposing disciplinary suspension on attorney already under suspension for noncompliance with CLE reporting requirements). *But cf. Nelson*, 838 N.W.2d at 536, 542–43, 545 (considering interim disability suspension—during which attorney received rehabilitative treatment for alcoholism—in mitigation of sanctions for misconduct related to alcohol abuse).

We next consider our precedent to calibrate an appropriate sanction. We strive to maintain consistency with our prior cases. *See*

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 550 (Iowa 2015). We first address cases involving violations of court orders. Silich provided Van Scoy with some, but not all, of his communications regarding the Medicare lien and thereby violated two court orders requiring him to provide the bank with copies of *all* such communications. "Sanctions for an attorney's violation of a court order vary in light of the accompanying misconduct." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 16–17 (Iowa 2012) (imposing a ninety-day suspension for misconduct including extortion). Most of our cases involving violations of court orders included misrepresentations and other misconduct. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 551–54 (Iowa 2012) (imposing an eighteen-month suspension for disobeying a court order, misrepresentation, neglect, and other misconduct); *Dunahoo*, 799 N.W.2d at 530–35 (imposing a one-year suspension for disobeying a court order, neglect, misrepresentations to the court, and other misconduct); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 816 (Iowa 2007) (imposing an eighteen-month suspension for disobeying court orders, neglect, and misrepresentations to the court and clients). Silich's violations of court orders did not involve misrepresentations. To the contrary, he was candid with the court regarding his failure to keep his client updated as ordered. When a violation of a court order is an isolated violation, we have imposed a public reprimand. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 675 (Iowa 2013) (noting a prior public reprimand for violating a court order that forbid her from contacting her former foster child without supervision by the department of human services); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hughes*, 557 N.W.2d 890, 895 (Iowa 1996)

(imposing a public reprimand for instructing her client to disobey a court order for drug testing). This case primarily involves neglect.

Our sanctions for neglect have ranged from a public reprimand to a six-month suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said,* 869 N.W.2d 185, 193 (Iowa 2015). A public reprimand is generally appropriate if there is only a single instance of neglect. *Dolezal,* 796 N.W.2d at 922. A suspension is appropriate if there is a recurring pattern of misconduct or multiple ethical violations. *Id.* In *Iowa Supreme Court Attorney Disciplinary Board v. Tompkins,* our court gave a public reprimand as a sanction for neglect. 733 N.W.2d 661, 669–70 (Iowa 2007). Like Silich, Tompkins failed to communicate with one of his clients, failed to respond to the client's requests for information, and failed to comply with the Board's requests for information. *Id.* at 665. Tompkins also allowed an appeal to be administratively dismissed because he felt the appeal would not change the outcome. *Id.* at 668. Tompkins had a longer prior disciplinary record than Silich, with two public reprimands for neglect and charging a nonrefundable minimum fee and a two-year suspension for breaking into women's homes and stealing their undergarments. *Id.* at 670. We found that a public reprimand was an appropriate sanction for Tompkins' conduct. *Id.*

In *Lemanski,* we imposed a sixty-day suspension for an attorney's neglect of a Medicare subrogation lien. *Lemanski,* 841 N.W.2d at 133–34. Like Silich, Lemanski failed to keep his client informed about the status of the lien and failed to respond to Board inquiries. *Id.* at 133. Lemanski had a prior thirty-day suspension for neglect and two admonishments. *Id.* at 132–33. Although we recognized the misconduct was similar to *Tompkins,* we found Lemanski's history of similar neglect

warranted a second suspension to deter such misconduct and protect the public. *Id.* at 134.

Silich's misconduct requires more than a public reprimand. Silich violated two court orders compelling him to provide copies of all Medicare-related communications to Van Scoy. Silich's failure to cooperate with the Board was more pronounced than in *Tompkins.* But, unlike *Lemanski,* Silich has no prior disciplinary suspension, and the need to deter him or protect the public is reduced because he testified he does not plan to return to practicing law. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kingery,* 871 N.W.2d 109, 124–25 (Iowa 2015) ("[W]e can consider voluntary cessation when evaluating whether our sanction will serve its purposes of deterring future misconduct and protecting the public."). On balance, we conclude Silich's license should be suspended for thirty days.

### V. Disposition.

We suspend Silich's license to practice law with no possibility of reinstatement for thirty days from the filing of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.13(3). Silich must comply with the notification requirements of Iowa Court Rule 35.23. Costs of this action are taxed to Silich pursuant to Iowa Court Rule 35.27(1). Unless the Board objects, Silich's disciplinary suspension shall automatically terminate after the thirty days on the condition that he has paid the costs of this action. *See* Iowa Ct. R. 35.13(2). His reinstatement, however, is also conditioned on his proof of compliance with our continuing legal education and client security requirements. *Adams,* 623 N.W.2d at 819 (holding attorney whose CLE reporting had lapsed must comply with CLE requirements before reinstatement following a disciplinary suspension).

**LICENSE SUSPENDED.**